# STONE, ET AL. v. LEWIN.

1. The Supreme Court cannot be invested with jurisdiction to examine a cause in Chancery by a writ of error sued out on a decree *pro forma*, entered by consent of the parties. It is competent for the chancellor to set aside such a decree as having been entered without any sufficient authority.

Writ of Error to the Court of Chancery for the 22d District of the Middle Division.

As neither the bill, answers, nor proofs are considered in the judgment of the Court, it is only necessary to state so much of the proceedings and decree as is covered by the opinion.

At the July term, 1842, the cause was continued, because the Chancellor then holding the Court had been of counsel for the complainant. At a special term, held in the same year, an argreement was entered of record to take proof; that at the next term of the Court, the Chancellor who had been of counsel, might determine the question of diligence, in the event of an application for a continuance, and that, when the cause is heard, should he preside, a decree *pro forma* be entered for or against the complainant as she might elect: at the July term, 1844, this entry appears: " This case is submitted for a decree on bill, answers, and exhibits, by consent, with an agreement that a decree *pro forma* be rendered by this Court, in favor of the complainant, perpetuating the injunction heretofore in this case granted. It is therefore ordered, adjudged, and decreed, that the said injunction be, and the same is hereby, rendered perpetual, and that the defendants pay the costs herein.

PECK and L. CLARK, for the plaintiffs in error.
No counsel appeared for the defendant in error.

GOLDTHWAITE, J.—We suggested, in the recent case of Elmes v. Sutherland, *supra*, that it was questionable if this Court was invested with any jurisdiction when a decree is not made by the Chancellor, but is entered *pro forma*, by the consent of the parties, in order to have a decision here more speedily, or from any other cause. This case presents the matter of such a decree so fully, that we must now decide the question, or consider it at rest.

At the formation of our State Government, it was provided, that "the Supreme Court, except in cases otherwise directed by the constitution, shall have *appellate* jurisdiction *only*. This is to be coextensive with the State, under such restrictions and regulations, not repugnant to the constitution, as may from time to

time, be prescribed by law. .[Const. Art. 5, § 2.] It is quite unnecessary to speculate upon the reasons which induced the prohibition contained in this section, as there can be no doubt of the intention to exclude the exercise of any original jurisdiction by the Court, as a Court. Our duty certainly is, to give it the effect which its authors intended it should have, and this can only be done by refusing to entertain jurisdiction of cases which have not, in point of fact, been decided by the inferior Courts. It is quite evident, that if the consent of parties can confer what is really original jurisdiction upon this Court, many cases will find their way here, which otherwise might not come; and it might become common to use the inferior Courts as mere offices for the preparation of cases.

In England the jurisdiction of the several Courts is not as with us, defined by a written constitution, but is chiefly ascertained from long continued usage and practice. The Court of the Master of the Rolls, though originally merely a branch of the Court of the Lord Chancellor, had gradually acquired such consideration, that Lord Elden, in Brown v. Higgs, 7 Vesey, 561, entertained serious doubts whether he was authorized to entertain an appeal from a re-hearing had by that Judge, and directed that matter to be argued before him. After hearing the argument and ascertaining that the duty was imposed, he said, "it has been thought, that in cases of this sort, the Court might formally affirm the judgment, and suffer the cause to go to the House of Lords, by reference to other cases, when it is conceived the parties mean to go to the House of Lords. But I consider it contrary to the duty of a Court of justice under any circumstances so to act. The suitors have a right to the deliberate attention and deliberate judgment of every Court, in every stage in which, according to the constitution, the cause may proceed; and there can be no circumstances under which I should ever permit myself to say, as the the cause is to go elsewhere, I give no judgment."

It is true, every suitor has the right to be heard ultimately, in this Court, but because this is so, it does not follow that he can come here in the first instance, or what in effect is the same thing, by consenting that the Court provided by the constitution to first hear his cause, shall decline that duty, and give effect to his con-

sent to remove it here. We are not to be understood as imply-
ing any censure upon the Chancellor in this particular instance,
as a very satisfactory reason existed why he should not deter-
mine the cause, and even if this reason was out of the way,
the practice has been so common, that *pro forma* decrees
might seem to be entirely warranted by the consent of the
parties.

We have endeavored to show, that this practice is in conflict
with the letter and spirit of the constitution, and earnestly hope
that it may be entirely eradicated, as it is frequently important to
a deliberate and correct examination of the cause in this Court,
that it should have received a careful examination in the subor-
dinate Courts. It is only when a cause is thus examined in the
Court of original jurisdiction, that the many mistakes of the par-
ties can be corrected, deficiencies supplied, and new views pre-
sented. If this examination is deferred until the cause comes
into the appellate Court, there can, in most cases, be neither
amendment or revision of the evidence, or frame of the proceed-
ings, and great injustice may result to suitors. The cause now
before us, is an illustration of the evil of this practice, as no evi-
dence was taken to sustain the bill, and the reversal of the Chan-
cellor's decree would conclude the complainant, when if the same
deficiency had been disclosed to him, he might have exercised his
discretion in permitting the party to take testimony.

The parties were probably induced to the course taken here
by the circumstance that the presiding Chancellor had been of
counsel for one of them, previous to his taking the office, but
this cannot give the Court jurisdiction. If this matter stands in
the way of a decision, a change of venue could have been had
under the statute. [Clay's Dig. 356, § 73.]

We have had some difficulty, whether a reversal of the de-
cree, or a dismissal of the writ of error, is proper under the cir-
cumstances, as we find it stated to have been held, by the
House of Lords, in Blundell v. Macartney, 2 Ridge Part C. 557,
that a decision founded on an order made by consent, will not
be reversed. We have not access to that decision to ascertain
its precise extent, but think it would be going entirely too far to
say, the parties are concluded by their consent to this *pro forma*
decree. We think the proper course is to dismiss the writ of error,

and the party can then apply to the Chancellor to set aside the *pro forma* decree, as unwarranted, and the cause will then proceed to its final termination.

Writ of error dismissed.