## COCHRAN vs. MARTIN.

[FINAL SETTLEMENT OF ADMINISTRATOR'S ACCOUNTS.]

1. *Ancillary administration; distribution of proceeds of sale of lands.*
Where the testator died in Georgia, the place of his residence, and his
will was there duly probated; and an ancillary administration was
granted in this State; and the administrator here, having sold certain
lands, under an order of the probate court, for divison among the de-
visees, remitted the proceeds of sale to the principal administrator in
Georgia, and, on the final settlement of his accounts, was allowed a
credit for the amount so remitted, on the production of the receipt of
the principal administrator,—*Held,* that the decree of the probate
court would not be reversed, at the instance of a devisee resident here,
unless injury was affirmatively shown.

2. *Administrator's liability for debt due from himself to intestate; pre-
sumption in favor of judgment.*—When administration is granted to a
person who is indebted to the decedent's estate, the administrator is
chargeable with the amount of the debt, as assets collected, although
he is only the surety of another person; but, to reverse a decree of the
probate court, refusing to charge him with the amount of such debt,
enough of the evidence must be set out to show error.

APPEAL from the Probate Court of Russell.
Tried before Hon. T. L. APPLEBY.

IN the matter of the final settlement of the accounts and
vouchers of Abram Martin, as administrator with the will
annexed of Alfred Welborn, deceased. The testator died
in Meriwether county, Georgia, the place of his residence,
in 1857, and his will was duly probated there. In January,
1858, a certified copy of the will, with the probate thereof,
was admitted to record in Russell county, where the testa-
tor owned certain lands; and letters of administration,
with the will annexed, were granted to Abram Martin. In
July, 1858, the administrator filed his petition in said pro-
bate court of Russell, asking an order to sell said lands, on
the ground that they could not be equitably divided among
the devisees without a sale; and an order of sale was
granted in November, 1858. The lands were sold under

this order, the sale reported to said probate court, and confirmed at the April term, 1859. The administrator transmitted the proceeds of sale to the principal administrator in Georgia; and on the final settlement of his accounts and vouchers, in August, 1870, he produced the receipts of said principal administrator, and asked a credit for the amounts thereby shown to have been paid over. "Thereupon," as the bill of exceptions recites, "came A. W. Cochran, the only surviving descendant of the testator's deceased daughter, Mary Jane Cochran, who was a legatee and devisee under the will, over twenty-one years of age, and had resided in this State during the whole time of said administration, and objected to said receipts being allowed as credits in favor of said administrator; which objection the court overruled, and allowed said receipts as a credit; to which ruling the said A. W. Cochran excepted."

"Said A. W. Cochran also exhibited a note for $5,400, belonging to the estate of said Alfred Welborn, dated May 24, 1854, payable one year after date, and signed by H. M. Elmore, Rush Elmore, Abram Martin (said administrator), and J. M. Newman; on which note were endorsed the following payments, or credits: May 1, 1857, $3,633.51; March 31, 1857, $997.50; and there was also another payment, not endorsed on said note, for about $950, made about the 1st January, 1859. Said A. W. Cochran claimed that said note ought to be charged against said administrator—1st, because he had negligently allowed the statute of limitations to bar the same; 2d, because he was liable as administrator for the amount of the same. Said A. W. Cochran moved that said note be charged against said administrator; which motion the court overruled, and said Cochran excepted. The court then proceeded to render a decree, discharging said Martin from further liability; to which decree said Cochran also excepted."

These two rulings of the court are now assigned as error.

RICE & CHILTON, and JOHN COCHRAN, for appellant. 1. Abram Martin being a debtor of the estate, upon his appointment as administrator became chargeable with cash

to the extent of his indebtedness from the time it became
due.—*Childress v. Childress*, 3 Ala. 754; *Kennedy v. Kennedy's Adm'r*, 8 Ala. 395.

2. Since the plaintiff did not seek to charge the administrator with the said note as a claim against the estate,
but as a debt due from him to the estate, the plea of the
statute of non-claim was insufficient in law, and could have
no application to the case.—Rev. Code, § 2239.

3. When administration is taken out in this State on the
estate of any person who, at the time of his death, was an
inhabitant of any other State or country, his personal
estate, after the payment of his debts, and charges on the
estate, must be disposed of according to his last will, if
probated in this State; and if no such will is probated,
according to the law of the State or country of which he
was an inhabitant.—Rev. Code, § 2163. Upon the settlement of such an estate, and after the payment of all debts
for which the same is liable in this State, the residue of
the personal estate may be distributed and disposed of according to the provisions of the preceding section; or it
may be transmitted or paid over to the executor or administrator of the State or country where the deceased had
his domicil.—Rev. Code, § 2164. The title of executors
and administrator, derived from a grant of administration
in the country of the domicil of the deceased, can not *de
jure* extend, as a matter of right, beyond the territory of
the government which grants it, and the moveable property
therein. As to such property, situate in foreign countries,
the title, if acknowledged at all, is acknowledged *ex comitate;* and of course it is subject to be controlled or modified, as every nation may think proper, with reference to
its own institutions and policy, and the rights of its own
subjects; and where new letters of administration have
been granted the foreign executor or administrator by the
proper domestic authority, though the new administration
is treated as merely ancillary, or auxiliary to the original
foreign administration, so far as regards the collection of
the effects and the proper distribution of them, still the
new administration is made subservient to the rights of

creditors, legatees and distributees resident within the country; and the residuum is transmissible to the foreign country only when the final account has been settled in the proper domestic tribunal upon the equitable principles adopted in its laws.—Story Confl. Laws, §§ 512, 513; *Harrison v. Mahorner*, 14 Ala. 834; *Bradley v. Broughton*, 34 Ala. 709. According to the authorities above cited, it was the duty of Abram Martin, upon the final settlement of the estate, and after the payment of all the debts and charges for which the same was liable in this State, to dispose of the residue of the personal estate according to the last will and testament of the deceased, which was probated in this State, or transmit the same to the administrator in Georgia. This transmission, however, was in no event to take place until after final settlement, and not even then, if such a course would work a hardship upon the legatees and distributees resident within this State.

4. All the authorities, both in England and America, recognize the principle in its fullest import, that real estate is exclusively subject to the laws of the government within whose territory it is situate.—Story Confl. Laws, § 428, and authorities there cited. In the consideration of wills of immoveable property, the doctrine of the common law is clearly established, that the law of the place where the property is locally situate, is to govern as to the capacity of the testator, the extent of his power to dispose of the property, and the forms and solemnities to give the will its due attestation and effect.—Story Confl. Laws, § 474. It was, therefore, the duty of Abram Martin to dispose of the real estate of the deceased in this State according to his last will, which was probated in this State, and to be guided in that disposition by the laws of Alabama; and it is not to be permitted him to escape such responsibility by a sale of the said lands and a transmission of the proceeds to the administrator in Georgia. The heirs-at-law resident within this State, have a right to insist upon a disposition of the proceeds of the sale of lands of the estate in this State according to the laws of this State, and the court therefore erred in allowing the introduction of the receipts from the

administrator in Georgia as vouchers to account for the proceeds of the sale of the said lands in this State, their introduction being objected to by one of the heirs-at-law of the estate who was and is, as the record shows, a resident of this State. Said land was sold under Rev. Code, Part II, Title 4, chap. 8. Now, did the mere fact that the administrator was ordered to perform the ministerial duty alter its character as realty, and fix upon it that of personalty? So to hold would be to permit the probate judge, by arbitrarily changing real to personal property, to sport with the rights of devisees, as these very material results depend upon its character as real or personal property: 1st, wills of personal property are to be construed *lex domicilii*; 2d, wills of real property are to be construed by *lex loci rei sitæ*. For the purpose of giving effect to this rule, as well as for many other reasons, domestic tribunals invariably take control of all real property situate within their jurisdiction. It is therefore the right of devisees vesting immediately upon the testator's death to have the property distributed by a domestic court, especially so of a minor, as the record shows plaintiff in error to have been. This right could not be divested by an order of sale, but only by legislative enactment. True, this enactment we have in Revised Code, § 2132, but that law was passed long after (28th January, 1867,) the transactions in question, and consequently can not affect the foregoing reasoning.

MARTIN & SAYRE, *contra*.—The bill of exceptions does not purport to set out all the evidence on which the court below acted; and the invariable rule of this court, in such cases, is to affirm the judgment, unless enough of the evidence is set out to show error affirmatively.—*Morgan v. Morgan*, 35 Ala. 307; *Taylor v. McElrath*, 35 Ala. 333; *Griffin v. Bland*, 43 Ala. 544; *Ward v. Cameron*, 37 Ala. 691; *Southern Ins. Co. v. Holcombe*, 35 Ala. 327; *Rupert v. Elston*, 35 Ala. 79–87; *Bradley v. Andress*, 30 Ala. 80; *Lovett v. Chisolm*, 30 Ala. 88; *Fleming v. Ussery*, 30 Ala. 282; *Kirksey v. Hardaway*, 41 Ala. 327.

B. F. SAFFOLD, J.—The appeal is taken by a devisee from the final settlement of the administration of an estate which was ancillary to one in Georgia. The appellee was the administrator, in this State, of Alfred Welborn, a citizen of Georgia, who died there, leaving a last will and testament, which was duly probated in the county of his residence. As such administrator, he sold lands for division among the devisees of the will, some of whom were citizens of Alabama. On his final settlement, he accounted for the proceeds of the sale with the receipts of the administrator in Georgia, to whom he had transmitted the money. The allowance of these credits is assigned as error. The appellant is an heir and devisee of the testator, and seems to claim in the latter capacity, as he makes no objection to the will. Sections 2163 and 2164 of the Revised Code direct what shall be done with the personal estate of the testator in such a case as this. After the payment of his debts and the charges on the estate, the residue may be either distributed according to the will, if probated in this State, as has been done here, or paid over to the executor or administrator of the State where the deceased had his domicil.

In *Harvey v. Richards*, (1 Mason, 381,) the court said that whether distribution ought to be decreed, or the property remitted abroad, is a matter, not of jurisdiction, but of judicial discretion, depending upon the particular circumstances of each case. In *Porter v. Heydock*, 6 Vt. 374, it was decided, that after the accounts for the effects received were settled, it was discretionary with the courts either to order distribution, or remit the effects to the principal administration; the latter being the usual course, but not to be adopted to the prejudice of parties interested. To the same effect is *Heydock's Appeal*, 7 N. H. 496. From the nature of the case, it is impossible that there should be a fixed rule concerning the final disposition to be made of all the property over which the administrator may exercise authority. Some discretion must remain to the court, in behalf of justice, and the proper protection of those interested living within its jurisdiction. Neither administra-

tion can always be entirely concluded, without reference to the other.—See *Dawes v. Boylston*, 9 Mass. 337; *Jennison v. Haygood*, 10 Pick. 77.

The *lex loci rei sitœ* governs the disposition of immovable property, and also the capacity or incapacity of a testator, to the extent of his power to dispose of the property, and the forms and solemnities to give the will its due attestation and effect.—Story on Conflict of Laws, § 474. The price of land does not become personalty, when the sale is for division. It may be very necessary that a court, in which an ancillary administration is conducted, to proceed to a distribution. But, when it acts contrarily, such necessity should be shown to induce a reversal of its decree.

If this land had been susceptible of partition, the proportion to be allotted to each distributee would have been set out in the application, and the division effected in this State, from necessity and the express law.   But, as it had to be sold for division, and was distributable under a will, there may have been eminent propriety in referring the distribution to the court of Georgia.   In the absence of proof of injury, we can not say that the court committed error in allowing the credits.

2. The bill of exceptions states, that the appellant. moved the court to charge the administrator with a note for $5,400, made by himself and others, payable to the testator—1st, because he had negligently allowed the statute of limitation to bar the same; and, 2d, because he was liable as administrator; and that the motion was overruled.   It does not say that the court refused to charge the administrator with the amount of the note, in opposition to the reasons assigned why he should be so charged, or that there was not some other reason which justified its action.   The note was not barred by any limitation when the administrator was appointed, and, as he was a principal obligor so far as the estate was concerned, he became chargeable with the amount of it, as assets collected, *Childress v. Childress*, 3 Ala. 754; *Kennedy v. Kennedy's Adm'r*, 8 Ala. 395.   But, as the transcript does not pur-

port to set out all of the facts connected with the action of the court, we can not assume that some valid defense was not adduced.

The decree is affirmed.

NOTE BY REPORTER.—The following opinion was afterwards delivered, in response to an application for a rehearing by the appellant's counsel, which has never come to the hands of the Reporter :

PER CURIAM.—We are asked to rehear this cause, on the proposition to charge the administrator with the note for $5,400, made by himself and others to his testator. It is claimed that the certificate of the probate judge, that the transcript contains " a full, true and correct transcript of all the proceedings" had in said cause, is equivalent to a statement that all the evidence in reference to the note was set out. The certificate applies only to such proceedings as were properly matters of record, or were made so by the bill of exceptions. The bill of exceptions does recite that the contestant exhibited a note belonging to the estate of the testator, for $5,400, with several payments indorsed thereon, besides one of $950 not indorsed, made after the appointment of the administrator, and moved the court to charge him with it, which the court refused to do. But it states nothing more that is material on the subject, especially the reason of the court's refusal. It is not stated by whom the last payment was made, or whether the entire balance had not been paid. Everything pertaining to the note would be without the record, but for the bill of exceptions, and it does not tell us enough to show error.

The rehearing is denied.