[7] The judgments obtained against the city are conclusive against the respondent as to the existence of the nuisance and the amount of the damages (Mayor, etc., v. Brady, 115 N. Y. 611, 22 N. E. 237), but it is still open to the defendant to contest his responsibility for the creation of the nuisance. The manner in which the judgments were obtained is not called in question by respondent, and indeed is not open to collateral attack. 11 Black on Judgments (2d Ed.) §§ 697–698. Our conclusion is that the judgment appealed from must be reversed as to defendant Lloyd, and a new trial granted, with costs to the appellant to abide the event.

INGRAHAM, P. J., and MILLER, J., concur. LAUGHLIN and DOWLING, JJ., dissent.

---

(147 App. Div. 741.)

### In re TAILER et al.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

1. WILLS (§ 753*)—CONSTRUCTION—SPECIFIC LEGACY.

Testator directed that all life insurance should be for the sole benefit of his wife, and bequeathed to her absolutely all the moneys collected therefrom. He then gave to her horses, carriages, furniture, personal effects, etc., and provided that the residue of his estate should pass to trustees to invest and pay the income to the wife for life, and, on her death, to pay over the same and all accumulations to 17 persons designated. *Held*, that the bequest of the insurance moneys was a specific legacy, and could not be used to pay debts so long as there was other property available for that purpose.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1939–1944; Dec. Dig. § 753.*]

2. CONVERSION (§ 19*)—WILLS—CONSTRUCTION.

Testator, after giving certain insurance moneys, horses, carriages, etc., to his wife, "devised and bequeathed" to his executors the residue of his estate, in trust to invest and pay the income to testator's wife for life, and, on her death, to pay over the same to 17 persons, including collateral relatives, god children, and servants, in amounts varying from $500 to $75,000, directing the trustees to pay over the legacies in full without deductions for commissions, transfer, or succession tax. *Held* that, notwithstanding the use of the word "devise," the will should be construed as creating an equitable conversion of testator's real property into personalty as of the date of testator's death, from which and from the proceeds of the personal property not specifically bequeathed the debts and expenses of administration must first be paid.

[Ed. Note.—For other cases, see Conversion, Cent. Dig. § 45; Dec. Dig. § 19.*]

3. WILLS (§ 782*)—PROVISION FOR SURVIVING WIFE—ELECTION.

Testator bequeathed all sums received from life insurance to his wife for her sole benefit, together with all horses, carriages, furniture, personal effects, etc., and all personal property except money and pecuniary investments, and then bequeathed the residue of his estate to trustees to pay the income to the wife for life, and, after her death, to pay specified legacies from the principal to others. *Held*, that the provisions for the benefit of the widow were in lieu of dower, and the widow was put to an election by Real Property Law (Consol. Laws 1909, c. 50) § 201, as to

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which she would take within one year after testator's death, unless the time was extended.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2018–2033; Dec. Dig. § 782.*]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the accounts of Edward N. Tailer and others, as executors of the estate of William W. Tailer, deceased. From a decree for settling the accounts, Henry R. C. Watson and others, as executors of Maria C. Tailer, deceased, and Charles H. Beckett and William H. Hamilton, as special guardians, etc., appeal. Reversed.

See, also, 135 App. Div. 924, 120 N. Y. Supp. 1148.

On the 15th of July, 1905, William H. Tailer died, leaving him surviving Maria C. Tailer, his widow, and no children or issue of children. He left a will, executed November 27, 1900, which reads as follows:

"I, William H. Tailer, of the City of New York, declare this to be my last will and testament.

"I nominate and appoint my wife, Maria C. Tailer and my brothers, Edward N. Tailer and Robert W. Tailer, to be the executors of this, my last will and testament, and I direct that they be not required to give any bond for the faithful performance of their duties as such. I also direct them to pay all my just debts and funeral expenses as soon as practicable after my decease.

"It is my will that all amounts of insurance upon my life that are payable at my death shall be for the sole benefit of my wife, and accordingly I give and bequeath to her absolutely all the monies due and to become due and all that may be collected from every policy of insurance now outstanding or that may hereafter be issued upon my life.

"I give and bequeath to my said wife all of my horses, carriages and harness, all my silver, paintings, books, furniture and personal effects, and all of my personal property, except money and pecuniary investments, absolutely.

"All the rest, residue and remainder of my estate and property, real and personal, I give, devise and bequeath to my executors, hereinabove named, or to such of them as shall qualify and act as such, and to their successors, in trust to invest the same and keep it invested in such securities as they may approve, and to collect the income thereof and pay it over or apply it to the use of my said wife, Maria C. Tailer, for and during the period of her life; and, from and after the death of my said wife, I give, devise and bequeath the principle so held in trust and I direct my said trustees and their successors to pay over and transfer the same and all accumulations and increase thereof as follows, that is to say: to my niece Agnes S. Burnett, the sum of one thousand dollars; to my niece, Mary T. Livingston, the sum of one thousand dollars; to my niece, Fannie Bogert Tailer, the sum of one thousand dollars; to my nephew, Thomas Suffern Tailer, the sum of one thousand dollars; to my nephew, James Lee Tailer, the sum of one thousand dollars; to William Hallett Tailer, Junior, son of my nephew Henry Pennington Tailer, the sum of seventy-five thousand dollars; to my said nephew, Henry Pennington Tailer, the sum of twenty thousand dollars; to my nephew, Edward Loring Tailer, the sum of twenty thousand dollars; to my niece, Sophia Pennington Trowbridge, the sum of twenty thousand dollars; to my nephew, James Bogert Tailer, the sum of twenty thousand dollars; to my niece, Anna Tailer Cole, the sum of twenty thousand dollars; to my nephew, James Clinton Spencer, the sum of twenty thousand dollars; to my godson, Robert Reginald Livingston, the sum of five hundred dollars; to my godson, Sydney Salisbury Breese, the sum of five hundred dollars; to Robert Tailer Townsend, son of my nephew, John R. Townsend, the sum of one thousand dollars; to my coachman, Martin Haggerty, if in my service at the time of my death, the sum of one thousand dollars; and to my butler, Charles Terry,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

if in my service at the time of my death, the sum of one thousand dollars; and I direct. my said trustees and their successors to pay over the above mentioned legacies in full and without deduction for commissions or for any transfer or succession tax or other charge, and to defray such commissions, taxes and other charges from the rest of the trust estate remaining in their hands. The above mentioned legacies to the children of my brothers, Edward N. Tailer and Robert W. Tailer, were not made larger because they are already well provided for and I wish only to give them a suitable token of remembrance.

"And as to the rest, residue and remainder of my said trust estate, including all lapsed legacies and all of my property not hereinabove sufficiently disposed of, I give, devise and bequeath the same, and I direct my executors and trustees and their successors to pay over and transfer the same to and among those persons who would inherit and take the same, and in the same shares and proportions as provided by the laws of the State of New York in case I had died intestate.

"I further give to my said trustees and to their successors full power to sell any or all of my real estate and to execute the necessary instruments therefor, and generally to change any of my investments in their discretion and take all and every necessary action for the preservation or distribution of my estate.

"In Witness Whereof, I have hereto set my hand and seal this twenty-seventh day of November, in the year nineteen hundred.

"W. H. Tailer  [L. S.]"

The will was admitted to probate and letters testamentary issued to the executrix and executors therein named. They qualified, entered upon the discharge of their duties, and thereafter collected upon the life insurance policies referred to in the will $120,350.23 from the sale of other personal property $20,314.93, and there still remains undisposed of personal property of a small value. From real estate sold by them they realized, over and above incumbrances, including rent received, $89,904.20, and there remains undisposed of real property of the value of several thousand dollars. After the payment of the debts of the decedent, the funeral expenses, and certain expenses connected with the administration, amounting to $131,669.95, there remained in their hands from the proceeds of the personal property sold and the insurance collected $8,995.21. Upon the presentation of their accounts for final settlement, the Surrogate's Court held that the proceeds derived from the sale of the personal property, not including the insurance policies, be first applied towards the payment of the debts, and then so much as necessary of the proceeds of the insurance policies be applied to pay the balance; and, after making such application, there remained of moneys derived from the insurance policies $8,995.21, which should be paid to the widow of the testator, after deducting certain administration expenses. The accounts were settled accordingly and a decree entered to this effect, from each and every part of which the widow appealed, and she also brought up for review an allowance of certain items of costs. The special guardians for certain infant beneficiaries also appeal from so much of the decree as denied them extra allowance of costs. After the appeal had been taken this court appointed a referee, under section 2586 of the Code of Civil Procedure, to take and receive further testimony and documentary evidence as to the time when the policies of insurance were taken out, and also concerning the advancement of certain moneys to the decedent for his own use by his wife. The proof thus taken shows that all of the policies of insurance were taken out prior to the execution of the will, and it also fairly tends to establish that for many years prior to the time the testator made his will his wife had annually turned over to him an income derived from her father's estate, amounting to several thousand dollars; that she also turned over to him some five or six years before the will was made $82,500, her portion of her father's estate then distributed; and that a part of this money was used by him in improving the real estate sold by his executors, from which $89,994.20 was realized. Since the appeal was taken the widow has died, and her executors were substituted in her place as appellants.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

John M. Bowers, for appellants the executors of Maria C. Tailer.

William H. Hamilton, for appellants William H. Hamilton and Charles H. Beckett, special guardians.

Edward S. Frith, for ·respondents executors of William H. Tailer.

McLAUGHLIN, J. The main question to be determined turns upon the construction to be put upon the will of the testator, and is presented by the appeal taken by his widow; the contention being (1) that the gift of the insurance moneys is a specific legacy; (2) that, under the terms of the will, there was an equitable conversion of the testator's real estate into money as of the date of his death; and (3) that the provisions in the will for her benefit were in lieu of dower. If the contention be correct, then the decree of the Surrogate's Court is wrong, because she is entitled, in that case, to have the debts of the testator, there being sufficient for that purpose, paid out of the proceeds of the other property, real and personal.

[1] First. I am of the opinion that the bequest of the insurance moneys was a specific legacy. The determination of whether or not a legacy is specific depends upon the intent of the testator, which must be determined from the language used in the bequest when the same is read and construed in the light of the language used in the other provisions of the will. Davis v. Crandall, 101 N. Y. 311, 4 N. E. 721. When the language used in this bequest is thus read and construed, it seems to me that the testator intended all of his debts should be paid out of the proceeds of his other property, real and personal, before she could be deprived of her bequest or any part of it. If nothing were received from the insurance policies, then her legacy failed (Tichener v. Tichener, 41 N. J. Eq. 39, 2 Atl. 778), and she would not have received anything, because the bequest is limited to the amount collected from such policies. The language is:

"All amounts of insurance upon my life that are payable at my death shall be for the sole benefit of my wife, and accordingly I give and bequeath to her, absolutely, all. the monies due and to become due and all that may be collected from every policy of insurance now outstanding or that may hereafter be issued upon my life.".

All of the policies in question were issued and outstanding at the time the will was made. Observe the words for her "sole benefit," negativing the idea that the same was for the benefit of any one else, or could be paid to any one but her. Undoubtedly, if the other property were not sufficient to pay creditors, then the same could be taken by them because a testator is required to pay his debts before he can give anything away. Here no question is presented as to creditors because the other property is sufficient to pay them in full; the contest being solely between the widow on the one hand and general legatees on the other.

There are numerous authorities where it has been held that a legacy was specific in which the intent of the testator that it should be so was certainly no clearer than in the present case. Thus a bequest of the

balance or surplus due on a policy of life insurance after the satisfaction of a debt to secure which it had been assigned (Leonard v. Harney, 173 N. Y. 352, 66 N. E. 2); a bequest to pay a certain sum out of a bank deposit in the name of a daughter (Crawford v. McCarty, 159 N. Y. 514, 54 N. E. 277); a bequest of "all my right, title and interest in 30 shares which I own in the Bank of the United States" (Walton v. Walton, 7 Johns. Ch. 258, 11 Am. Dec. 456); a bequest of "the balance of my stock as per my stock book" (Trustees, etc., v. Tufts, 151 Mass. 76, 23 N. E. 1006, 7 L. R. A. 390); a bequest of "whatever sum might be on deposit in Provident Savings Institution" (Towle **v.** Swasey, 106 Mass. 100); a bequest of "my books and papers of every description" (Perkins v. Mathes, 49 N. H. 107); a bequest ·of all the property ·to which the testatrix might be entitled from the estate of her deceased husband (Moore v. Moore, 29 Beav. 496); and a bequest of "all the property I possess in the public funds" (Cochran v. Cochran, 14 Sim. 248). Here the bequest is "absolutely all the monies due and to become due and all that may be collected from every policy of insurance now outstanding or that may hereafter be issued upon my life." The amount thus received was to be for her sole benefit. She was to have this irrespective of the disposition made of the balance of his property. This was just as specific as the bequest to her of his horses, carriages, etc.

[2] Second. After the gift of the insurance moneys, the horses, carriages, etc., the testator gave, devised, and bequeathed to his executors, or such of them as might qualify, all the rest, residue, and remainder ·of his estate, both real and personal, in trust "to invest the same and keep it invested in such securities as they may approve," and pay the income derived therefrom to his wife during her life, and, upon her death, to pay over and transfer the same and all accumulations thereon to 17 persons, including collateral relatives, god children, and servants, in amounts varying from $500 to $75,000. As to the amounts thus given, he directed his trustees "to pay over the above mentioned legacies in full, without deduction for commissions * * * transfer or succession tax. * * ·* " By this provision the testator, as it seems to me, clearly intended that his real estate should immediately upon his death be treated as personal property, because· it is only in this way that his trustees could do what he directed. They were to invest and keep the same invested in such securities as they might approve and pay over to his wife, what?—not rents, issues, and profits derived from real estate, but the income derived from the investments. The amount given to the 17 different persons was not an interest in land, but a specified interest in "the principal so held in trust"; that is, money or securities in which the same had been invested. His words are "to pay over the above mentioned legacies in full." It was only by a conversion of his real estate into money that this provision of his will could be carried out, either as to his wife or the 17 other persons named. The use of the· word "devise" is not significant, nor should weight be given to it in construing the clause, because to do so would destroy the intent of the testator. Kalbfleisch v. Kalbfleisch, 67 N. Y. 354. ·The general rule is, if it is necessary to carry out the in-

tent of a testator that his real estate should be converted into personalty, then it will be so regarded as of the date of his death. Stagg v. Jackson, 1 N. Y. 206; Power v. Cassidy, 79 N. Y. 602, 35 Am. Rep. 550; Wells v. Wells, 88 N. Y. 323; Lent v. Howard, 89 N. Y. 169; Delafield v. Barlow, 107 N. Y. 535, 14 N. E. 498; Salisbury v. Slade, 160 N. Y. 278, 54 N. E. 741; Matter of Tatum, 169 N. Y. 514, 62 N. E. 580; Given v. Hilton, 95 U. S. 591, 24 L. Ed. 458. The trustees in another portion of the will were given the power of sale, which, while not in terms imperative, nevertheless must be regarded, in order to carry out the general scheme of the testator, to operate as an immediate conversion, and this would be so even though they were vested, for the benefit of the estate, with discretion as to the time the sale was to be made. Lent v. Howard, supra. In that case the testator authorized his executors to sell his real estate, convert the same into money at such time or times, and at such prices as should to them seem for the best interest of his estate and to carry out any and all contracts executed by him. He further directed them "after paying debts and carrying out the provisions of my will as above directed to invest all the balance and remainder of my estate, remaining in their hands" in certain securities. The court held that:

"It was clear that a conversion was necessary to accomplish the purposes and intent of the testator in the disposition of the proceeds and when a general scheme of the will requires a conversion, the power of sale operates as a conversion, although not in terms imperative."

In Asche v. Asche, 113 N. Y. 232, 21 N. E. 70, the court said:

"The necessity of a conversion to accomplish such purpose is equivalent to an imperative direction to convert and effects an equitable conversion of the property."

In McCready v. Metropolitan Life Insurance Co., 83 Hun, 531, 32 N. Y. Supp. 489, affirmed 148 N. Y. 761, 43 N. E. 988, a case in some respects quite similar to this, except that the securities in which the investments were to be made were specified, the court said:

"It will be observed that by the provisions of the will last referred to the executrix is required to invest all the real estate, as well as other property of the testator, in certain specified securities of a particular kind. Of course, this could not be done without disposing of the real estate, and this clause operates as an equitable conversion of the realty into personalty for the purposes of the trust and an implied power of sale therefore exists."

It is also to be observed that in what is termed the residuary clause the trustees are directed "to pay over and transfer"—words peculiarly applicable to the distribution of personal property—which emphasizes what has already been said that it was the intent of the testator that immediately upon his death his real estate should be converted into money. In this provision of his will he sought to provide, not only for lapsed legacies, but also for any surplus derived from the sale of the real and personal property after the bequests made by him had been paid, or that his wife might possibly outlive all of the legatees, a contingency quite improbable, but not impossible.

[3] Third. The provisions in the will for the benefit of the widow, while not so expressed in words, were intended by the testator to be

in lieu of dower. This seems necessarily to follow from the fact that such provisions, if not antagonistic to, are certainly inconsistent with, a claim in this respect on her part. After making the specific bequests to her, he gave "all the rest, residue and remainder" of his property "real and personal" to his trustees, or such of them as might qualify and act as such, for the purpose of having them invest the proceeds and keep the same invested in such securities as they might approve, and collect the income derived therefrom and pay the same to his widow during her life, when the same were to be disposed of as directed.

If it be true, as we have heretofore seen, that the trustees were bound to sell the real estate for the purpose of providing the principal from which the income was to be paid, then certainly he did not intend her to have dower in such land. She could not have both. She could not insist upon the sale of the real estate for the purpose of setting up the trust, and at the same time assert her claim for dower. This he must have known. The whole scheme of the will, so far as she is concerned, indicates that this was his purpose. The provisions in the will for her benefit, and a claim to dower, are so inconsistent that to enforce one would destroy the other. She was therefore put to an election as to which she would take (Asche v. Asche, supra), and the same had to be made within one year after his death, unless the time were extended (section 201, Real Property Law [Consol. Laws 1909, c. 50]). It was unnecessary for him to state his intention in express words because the same could be implied from the other provisions of the will. Matter of Gordon, 172 N. Y. 25, 64 N. E. 753, 92 Am. St. Rep. 689. "It has been held that a bequest in lieu of dower, and the acceptance of same, amounts to a matter of contract and purchase; that the wife is to be paid the bequest in preference to other legacies and without abatement, the debts being first paid." Flynn v. McDermott, 183 N. Y. 62, 75 N. E. 931, 2 L. R. A. (N. S.) 959, 111 Am. St. Rep. 687; Dunning v. Dunning, 82 Hun, 462, 31 N. Y. Supp. 719, affirmed on opinion below 147 N. Y. 686, 42 N. E. 722.

What the Vice Chancellor said in Isenhart v. Brown, 1 Edwards Ch. 411, is quite applicable here. He said:

"I am bound to regard the law as settled that, under circumstances like the present, a widow is entitled, after payment of the debts, to the whole provision which the husband chooses to make for her by his will in lieu of dower in preference to all other legatees, who are consequently to be postponed, where there is a deficiency of assets. Of course, the debts must be paid before she can be entitled even to specific legacies, but these debts may be paid out of other parts of the estate in exoneration of what is specifically bequeathed or devised. In the present instance the testator has authorized his real estate to be sold by his executors and has disposed of the whole of it as personal estate. There is no difficulty, therefore, in applying the proceeds of the real estate, as well as the proceeds of the personal property not specifically bequeathed to the payment of the debts."

For the reasons above stated, it seems to me the real estate of the testator must be deemed as converted into money as of the date of his death, from which, and the proceeds of the personal property not specifically bequeathed, the debts and expenses of administration must

first be paid. If anything remains, it should be devoted to the setting up of the trust as directed in the will. If such proceeds be insufficient for that purpose, then the balance of such debts and expenses must be paid from the insurance moneys.

In reaching this conclusion, I have not considered the evidence taken by the referee showing or tending to show the receipt by him from his wife of the money derived by her from her father's estate. This evidence, however, might properly be considered as showing at least a moral obligation resting upon the testator to make ample provisions for the benefit of his wife. I, however, prefer to rest my conclusion upon the language used in the will itself. It is a general rule that provisions in a will for the benefit of a wife should be construed liberally in her favor (Moffett v. Elmendorf, 152 N. Y. 487, 46 N. E. 845, 57 Am. St. Rep. 529), and such rule should be here applied.

If the foregoing views be correct, then it is unnecessary to consider or pass upon the questions presented by the other appeals.

It follows that the decree of the Surrogate's Court appealed from must be reversed, and the matter sent back, with directions to enter a decree in accordance with the views expressed in this opinion, with costs in this court to all parties filing separate briefs, payable out of the estate. All concur.

---

(148 App. Div. 177.)      **In re EGAN.**

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

RECORDS (§ 14*)—MUNICIPAL RECORDS—INSPECTION BY TAXPAYERS—STATUTORY RIGHT.

     [Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. § 14.*]

     Scott and Dowling, JJ., dissenting.

Appeal from Special Term, New York County.

Application of John J. Egan for a writ of mandamus directed to the Board of Water Supply of the City of New York, Charles Strauss and others, as Commissioners of and constituting the Board of Water Supply, to compel an inspection of the books and records of the of-

---