## IN RE ESTATE OF HETTA A. SANFORD.

**CONVERSION:** Equitable Conversion—Extent to Which Doctrine
1 Carried. The doctrine of equitable conversion of realty into personalty will not be carried further than is *imperatively* necessary in order to carry out a testator's intent.

**TAXATION:** Collateral Inheritance—Proceeds of Foreign Real
2 Estate. The proceeds of foreign real estate belonging to a resident testator are subject to the succession tax of this state when such real estate has, from imperative necessity, been converted into personalty, in order to pay legacies to collateral

heirs, even though such proceeds have not been manually brought into this state, and are subject to a succession tax under the laws of the foreign state. (Sec. 1481-a, Code Supp., 1913.)

**EXECUTORS AND ADMINISTRATORS:** Ancillary Administration
3 **Turning Over Funds.** It will be presumed that the courts of a sister state will promptly order its ancillary administrator to turn over funds to the principal administrator in this state when such action is necessary to pay debts.

**TAXATION:** Collateral Inheritance—Equitable Conversion of For-
4 eign Lands—Limitation. The doctrine of equitable conversion of realty into personalty will not, in an estate consisting of both domestic and foreign realty, be carried so far in the interest of the succession tax of this state, and to the detriment of general residuary legatees, as to compel the conversion of *all* such foreign lands into personalty and the application of the *entire* proceeds to the discharge, in this state, of money legacies. To so do might bring the entire estate under our succession tax, though part of the estate might be foreign realty passing in fee. In the instant case, *held* that the transfer of the residuary estate should be here taxed in the proportion that the total net value of the estate in the foreign state bears to the total net value of the entire estate.

**TAXATION:** Collateral Inheritance—"Debts"—Federal and Suc-
5 cession Taxes. Neither succession taxes nor Federal inheritance taxes are "debts" against an estate in such sense that they may be deducted in the computation of the state succession tax. (Sec. 1481-a2, Code Supp., 1913.)

**TAXATION:** Collateral Inheritance—"Debts"—Income and Cur-
6 rent Taxes. Accrued Federal income taxes, and current general taxes lienable at the death of decedent, are proper deductions in computing state succession taxes. (Sec. 1481-a2, Code Supp., 1913.)

*Appeal from Cass District Court.*—J. B. ROCKAFELLOW, Judge.

DECEMBER 19, 1919.

REHEARING DENIED MARCH 17, 1920.

THIS is an appeal from the finding and decree of the

district court of Cass County, holding the estate of Hetta A. Sanford liable for the payment of a collateral inheritance tax. E. H. Hoyt, treasurer, F. M. Nichols, executor, Charles W. Sanford, Daisy R. Sanford, and other residuary legatees appeal.—*Reversed in part and remanded.*

*H. M. Havner*, Attorney General, *B. J. Powers, Tom C. Whitmore*, and *E. M. Willard*, for appellants.

*D. J. Flaherty*, for appellees.

STEVENS, J.—Hetta A. Sanford, a resident of Cass County, Iowa, died testate on December 20, 1916, seized and possessed of real and personal property of the approximate value of $230,000. Of this amount, $35,054.-

1. CONVERSION: equitable conversion: extent to which doctrine carried.

69 was personal property; and the rest, real estate situated in Iowa, Nebraska, and Missouri. The Missouri land was devised in fee, and does not enter into our consideration in this case. Her will made money bequests to the extent of $147,800 to various collateral relatives, friends, missionary societies, colleges, and other societies or institutions. The following is the residuary clause of the will:

"If after all my just debts are paid, and all of the foregoing gifts and bequests are paid and satisfied it should be found that there still remain a portion of my property that has not been disposed of, I desire that such undisposed of property shall be divided share and share alike between my son, Charles W. Sanford, my daughter-in-law, Daisy R. Sanford, and my sister, Martha H. Ayres."

The case involves few, if any, disputed questions of fact, and was submitted largely upon an agreed statement of facts, from which it appears that the net value of the estate in Iowa, subject to the collateral inheritance tax, was $84,428.56 (on which the tax, amounting to $4,221.43, was promptly paid by the executor), and of the real estate and

other property in Nebraska, which includes $6,796.25 received as rental therefrom, was $110,986.37. The controversy arises out of the attempt of the treasurer of the state of Iowa to collect an inheritance tax upon the Nebraska property. The will was admitted to probate by the district court of Cass County, Iowa, on the 23d day of January, 1917, and Frank M. Nichols was appointed executor; and, on July 23, 1917, same was admitted to probate in Saunders County, Nebraska, upon a duly certified and authenticated copy of the will and of its probate by the district court of Cass County, and Frank M. Nichols was appointed executor in that state. Except a small amount of money, none of the personal property or proceeds of the sale of the Nebraska real property has been brought into this state by the executor, but $56,850 thereof has been paid to various legatees named in the will, the amount paid to each being 75 per cent of the legacy. The court below found this amount subject to the succession tax, and directed the executor to pay $2,842.50, with interest thereon, to the treasurer of state, but found that the real estate in Nebraska, except that actually used to pay legacies, did not come within the statutes or jurisdiction of this state. The Iowa real estate sold by the executor consisted of 720 acres in Adair County, and the Nebraska real estate, of 320 acres in Saunders County and a large tract in York County.

I. It is not claimed by counsel for appellants that real property situated outside of this state, as such, is subject to the payment of a succession tax in this jurisdiction, but that, by the terms of the will of Hetta A. Sanford, there was an equitable conversion of all of her real estate, and that, under the provisions of Section 1481-a, Supplement to the Code, 1913, the same became subject to the tax in this state. Section 1481-a is as follows:

"The estates of all deceased persons, whether they be

inhabitants of this state or not, and whether such estate consists of real, personal or mixed property, tangible or intangible, and any interest in, or income from any such estate or property, which property is, at the death of the decedent owner, within this state or is subject to, or there-after, for the purpose of distribution, is brought within this state and becomes subject to the jurisdiction of the courts of this state, or the property of any decedent, domiciled within this state at the time of the death of such decedent, even though the property of such decedent so domiciled was situated outside of the state, except real estate located outside of the state passing in fee from the decedent owner, which shall pass by will or by the statutes of inheritance of this or any other state or country, or by deed, grant, sale, gift, or transfer made in contemplation of the death of the donor, or made or intended to take effect in possession or enjoyment after the death of the grantor or donor, to any person, or for any use in trust or otherwise, other than to or for the use of persons, or uses exempt by this act shall be subject to a tax of five per centum; * * *''

The doctrine of equitable conversion has been so often defined and discussed by the courts of this and the other states of the Union as to require little more than a restatement of the conditions under which same will arise, and to make application thereof to the facts of this case. The general rule was stated in *Hanson v. Hanson,* 149 Iowa 82, as follows (quoting from *Darlington v. Darlington,* 160 Pa. 65) :

" 'To work a conversion of real estate into personalty, there must be either (a) a positive direction to sell; (b) an absolute necessity to sell, in order to execute the will; or (c) such a blending of realty and personalty by the testator in his will as to clearly show that he intended to create a fund out of both real and personal estate, and to bequeath the same as money. In the first, the intention to convert is

expressed; in the latter two, it is implied. A bare power of sale, like a discretionary power given in a will, does not work a conversion, until exercised.' Again, it has been said in effect that: 'Equitable conversion arises from an express, clear, and imperative direction, or from a necessary implication of such express direction. The question of conversion is one of intention, and the question is, Is it the testator's intent to have his real estate converted into personalty immediately upon his death?' (citing *Clift v. Moses,* 116 N. W. 144)"

The will in question did not contain positive directions to sell any of the real estate. The personal property amounted to only $35,054.69, of which amount approximately two thirds were required for the payment of debts and the expenses of administration; so that it was necessary for the executor to sell a large portion of the real estate, to pay the legacies provided by the will. It is contended by counsel for appellant that this necessity worked an equitable conversion of at least so much of the real estate of testator as was required for the payment of the legacies, amounting to $147,-800. Unless, however, an absolute, imperative necessity to sell the real estate, or some part thereof, in order to carry out the terms and provisions of the will, is shown, an equitable conversion did not result. If, on the other hand, such absolute, imperative necessity existed, then the intention of the testator to work an equitable conversion of the real estate will be implied. *Hanson v. Hanson,* supra; *Beaver v. Ross,* 140 Iowa 154; *In the Matter of the Estate of Bernhard v. Henning,* 134 Iowa 603; *Swisher v. Swisher,* 157 Iowa 55; *Inghram v. Chandler,* 179 Iowa 304; *Ramsey v. Ramsey,* 226 Pa. 249 (75 Atl. 420); *Isenburg v. Rose,* (N. J.) 99 Atl. 615; *Harris v. Ingalls,* 74 N. H. 339 (68 Atl. 34); *Chick v. Ives,* (Neb.) 90 N. W. 751; *Griffith v. Witten,* 252 Mo. 627 (161 S. W. 708); *Greenman v. McVey,* 126 Minn. 21 (147 N. W.

812); *Stake v. Mobley,* 102 Md. 408 (62 Atl. 963); *In re Tailer,* 147 App. Div. 741 (133 N. Y. Supp. 122); *Lynch v. Spicer,* 53 W. Va. 426 (44 S. E. 255); *Becker v. Chester,* 115 Wis. 90 (91 N. W. 87); *Appeal of Clarke,* 70 Conn. 195 (39 Atl. 155).

Manifestly, the facts disclosed make it certain that testator must have intended an equitable conversion of at least a part of her real estate, which took place immediately upon her death, for the purpose of executing and carrying out the terms of her will. *Beaver v. Ross,* supra; *In the Matter of the Estate of Bernhard,* supra; *Swisher v. Swisher,* supra; *Inghram v. Chandler,* supra; *Hanson v. Hanson,* supra.

There was an equitable conversion, however, only to the extent that the sale of real estate was imperatively necessary to pay the pecuniary legacies and otherwise carry out the intention and purpose of the testator. *Duffield v. Pike,* 71 Conn. 521 (42 Atl. 641); *McHugh v. McCole,* 97 Wis. 166 (72 N. W. 631); *Painter v. Painter,* 220 Pa. 82 (69 Atl. 323); *Boyce v. Kelso Home,* 107 Md. 190 (68 Atl. 550); *Kolars v. Brown,* 108 Minn. 60 (121 N. W. 229); *James v. Hanks,* 202 Ill. 114 (66 N. E. 1034).

But it is earnestly argued by counsel for appellees that, even though there was an equitable conversion of a part or all of the real estate of testatrix situated in the state of Nebraska, it is not liable to the payment of a succession tax in this state, for the following principal reasons: (a) That no part of the proceeds of the sale of the Nebraska property has ever been brought into the state of Iowa, or within the jurisdiction of the courts of this state; (b) that the administration of the estate in Nebraska is wholly independent of the administration in Iowa, and that the court is without jurisdiction to compel the executor to transfer

2. TAXATION: collateral inheritance: proceeds of foreign real estate.

the money from Nebraska into this state for distribution, and that same will be distributed under the order and direction of the probate court of Nebraska; (c) that all of the property situated in the state of Nebraska is subject to a collateral inheritance tax in that state, and it would be unjust and inequitable for another tax to be imposed thereon in this state; (d) that equitable conversion should not be applied for the purpose of giving the proceeds of the sale of the Nebraska land a constructive situs in Iowa, in order to subject same to liability or an inheritance tax in that state; (e) that, as it was not necessary to convert the residuary estate into money to effect a distribution thereof, it passed to the legatees as real estate, although in fact converted into money. On the other hand, appellant asserts that there was an equitable conversion of the entire estate, and, therefore, under the section of the statute quoted, supra, it is all liable to the succession tax in Iowa. We will dispose of these several propositions in the order stated.

(1) It is not material that no part of the proceeds of the sale of the real estate situated in Nebraska has been transferred by the administrator to Iowa, in so far as it is necessary to use the same in the payment of legacies, as the succession or transfer of personal property of the decedent, wherever situated, is subject to the imposition of a tax at the domicile of such decedent. *In re Estate of Weaver*, 110 Iowa 328; *Norris v. Loyd*, 183 Iowa 1056; *In re Hodge's Estate*, (Cal.) 150 Pac. 344; *State v. Dalrymple*, 70 Md. 294; *Magoun v. Illinois Tr. & Sav. Bank*, 170 U. S. 283 (42 L. Ed. 1037); *United States v. Perkins*, 163 U. S. 625 (41 L. Ed. 287); *In re Dingman's Estate*, 66 App. Div. 228 (72 N. Y. Supp. 694); Ross on Inheritance Taxation, Section 173. The tax is not imposed upon the property, but upon the succession. *In the Matter of the Estate of Stone*, 132 Iowa 136; *Herriott v. Potter*, 115 Iowa 648; *Maxwell v.*

*Bugbee,* 250 U. S. 525. The principles upon which this class of taxes rests are stated in *Magoun v. Illinois Tr. & Sav. Bank,* supra, as follows:

"They [inheritance taxes] are based on two principles: (1) An inheritance tax is not one on property, but one on the succession; (2) the right to take property by devise or descent is the creature of the law, and not a natural right, —a privilege; and, therefore, the authority which confers it may impose conditions upon it. From these principles it is deduced that the states may tax the privilege, discriminate between relatives, and between these and strangers, and grant exemptions; and are not precluded from this power by the provisions of the respective state constitutions, requiring uniformity and equality of taxation."

And this is true whether the transfer takes place by will or descent. *Appeal of Gallup,* 76 Conn. 617 (57 Atl. 699); *White v. Howard,* 46 N. Y. 144; *Gilman v. Gilman.* 52 Me. 165; *Wells v. Wells,* 35 Miss. 638; *Penfield v. Tower,* 1 N. D. 216 (46 N. W. 413).

It is true that, in a sense, the administration of the estate in Nebraska is independent of the administration in Iowa. The executor in Nebraska is under the jurisdiction and direction of the Nebraska court; but counsel concedes, in harmony with the holding of the courts everywhere, that the administration in Nebraska is ancillary. But, in the administration of estates, it often becomes necessary, for the payment of debts and in making distribution, that property in the possession of the ancillary administrator be turned over to the administrator of the domicile; and usually, as a matter of comity, such transfer is ordered by the court having jurisdiction of the ancillary administrator, without question. *In re Estate of Gable,*

3. EXECUTORS AND ADMINISTRATORS: ancillary administration turning over funds.

79 Iowa 178; *O'Conner v. Root,* 130 Iowa 553; *Dow v. Lillie,* 26 N. D. 512 (144 N. W. 1082); *Cochran v. Martin,* 47 Ala. 525; *Welch v. Adams,* 152 Mass. 74 (25 N. E. 34); *Dalrymple v. Gamble,* 66 Md. 298 (7 Atl. 683); *Welles' Estate,* 161 Pa. 218 (28 Atl. 1116); *Churchill & Bailey v. Boyden,* 17 Vt. 319. We entertain no doubt that our neigh-boring state, between whose citizens and the citizens of Iowa there are such intimate social and business relations, will enforce this rule of comity, in reciprocation of the well-settled policy of the courts of this state in dealing with the ancillary administration of estates. As we understand the record, the executor has ample funds in this state for the payment of any tax that may be imposed, based upon the value of the personal property in Nebraska.

(2) What has already been said in effect disposes of appellee's contention that the personal property in Nebraska cannot be taken into consideration in fixing the tax in this state, for the reason that a similar tax will be imposed and collected in Nebraska, resulting in double taxation. Whatever real merit may be claimed for counsel's position, the courts uniformly hold that a tax may be imposed by the state in which the property has its situs, and also in the state of the domicile. Each jurisdiction exercises its own separate and independent power of taxation, and there is no conflict. *In re Estate of Weaver,* 110 Iowa 328; Ross on Inheritance Tax, Section 173; Dos Passos on Law of Collateral Inheritance, Legacy and Succession Taxes, Chapter 4; *In the Matter of the Estate of Hartman,* 70 N. J. Eq. 664 (62 Atl. 560); *In re Estate of Merriam,* 141 N. Y. 479 (36 N. E. 505); *Keeney v. Comptroller of State of New York,* 222 U. S. 525 (56 L. Ed. 299); *O'Conner v. Root,* supra.

(3) Much reliance is placed by counsel for appellant upon the holding of the Pennsylvania court that, where there is an equitable conversion of real property, situated

in a foreign state, for the purpose of paying legacies, it becomes and passes as personalty, in such a sense that it is subject to the succession tax (*In re Estate of Handley,* 181 Pa. 339 [37 Atl. 587]; *Vanuxem's Estate,* 212 Pa. 315 [61 Atl. 876]); and by counsel for the executor and numerous legatees who have appealed upon the contrary holding of the New York, Massachusetts, and Illinois courts (*In the Matter of the Estate of Swift,* 137 N. Y. 77 [32 N. E. 1096]; *In re Estate of Baker,* 67 Misc. Rep. 360 [124 N. Y. Supp. 827]; *In re McKinlay's Estate,* 166 N. Y. Supp. 1081; *Connell v. Crosby,* 210 Ill. 380 [71 N. E. 350]; *McCurdy v. McCurdy,* 197 Mass. 248 [83 N. E. 881]). But it seems to us that this point is fully settled by Section 1481-a of the 1913 Supplement, which provides that all property, real, personal, or mixed, "tangible or intangible, and any interest in, or income from any such estate or property, which property is, at the death of the decedent owner, within this state or is subject to, or thereafter, for the purpose of distribution, is brought within this state . * * * at the time of the death of such decedent, even though the property of such decedent so domiciled was situated outside of the state, except real estate located outside of the state passing in fee from the decedent owner, which shall pass by will or by the statutes of inheritance of this or any other state or country * * * shall be subject to a tax of five per centum."

Money used for the payment of specific legacies, although derived from the sale of real property, the sale of which was imperatively necessary to carry out the provisions of the will, passes as personalty, and became such by equitable conversion, immediately upon the death of decedent, and therefore title in fee to the land converted did not pass to the legatees. The above statute is broad and comprehensive, and clearly includes all property

transferred to collateral heirs or legatees, without reference to the form or character thereof, or where situated, except real property not situated in Iowa, the title to which passed to such heirs or legatees in fee. In this case, only that part of the residuary estate that is located in Nebraska is exempt from the tax in this state.

III. Having arrived at the conclusion that there was an equitable conversion of so much of the real property of decedent as was necessary to pay the specific pecuniary bequests, a part of which was situated in Iowa

**4. TAXATION: collateral inheritance: equitable conversion of foreign lands: limitation.** and a portion in Nebraska, although the land in the latter state was sold by the executor appointed herein, upon application to and under the authority of the probate court of Nebraska, and that this state is, nevertheless, entitled to collect a succession tax based upon the value thereof, the same as though it had been personal property of the decedent situated in this state, at the time of his death, we have yet to determine whether all or any part of the residuary estate is liable to the payment of a tax. There is also a question of the deductions allowed by the probate court in Nebraska, but this matter will be given consideration hereafter.

As already stated, all of the real property in Iowa and Nebraska, except a tract in Dickinson County, Iowa, was sold by the executor, and hence the residuary estate will be distributed in the form of money. All of the real property, whether passing to specific or residuary legatees situated in this state, is subject to the payment of the tax. The difficulty presented is to locate the residuary estate. As to this, clearly, there was not an equitable conversion. The title thereof passed to the legatees, subject to the payment of debts, expenses of administration, and specific bequests. The residuary estate comprises only that portion of the

whole that will be left after the payment of debts, expenses, and the other legacies provided by the will. The will does not designate any particular property, nor is there anything therein to indicate that testator had a preference as to what portion of the estate should be reserved for the residuary legatees. They take what is left from the estate as a whole, without reference to its location. If, however, the proceeds of the sale of the Nebraska realty are all applied to the payment of specific money bequests, for the purpose of collecting a tax upon the entire residuary estate in Iowa, we ignore the fact that the residuary estate is taken out of the estate as a whole, and not alone out of the real estate in Iowa. Real property situated in another state, passing in fee, cannot be taxed in Iowa. The statute of Nebraska providing for the imposition of a succession tax, although not in evidence, is Section 6622, Revised Statutes of Nebraska, and is similar to Section 1481-a, supra, but is more specific and somewhat broader in scope, perhaps, particularly in its application to property of nonresidents. Our attention has been called to no decision of the Nebraska court dealing with property passing to residuary legatees in which the estate was partly in Nebraska and partly in a foreign state. It seems to us, however, that a perfectly fair and just rule would be to treat the residuary estate as situated partly in Iowa and partly in Nebraska, instead of so marshaling the assets as to make all, or so much thereof as possible, liable to the tax in this state. We therefore hold that the transfer of the estate to the residuary legatees should be taxed in Iowa, in the proportion that the total net value of the estate in Nebraska and the total net value of the estate in Iowa bear to the total net value of the whole estate. A different rule prevailing in another jurisdiction might require some modification of the above rule, in dealing with property having its situs in such juris-

diction. While we have been unable to find authorities directly in point, the following cases, among others not cited, have some bearing, at least, upon the rule just stated: *Wieting v. Morrow*, 151 Iowa 590; *Kingsbury v. Chapin*, 196 Mass. 533 (82 N. E. 700) ; *McCurdy v. McCurdy*, supra; *In re Estate of Gable*, 79 Iowa 178; *Tilford v. Dickinson*, 79 N. J. L. 302 (75 Atl. 574).

The court, in *Wieting v. Morrow*, supra, dealt with a controversy involving the imposition and collection of the succession tax in Iowa upon the transfer of personal property therein, belonging to an estate having its primary administration in New York. The will gave the widow an undivided one third of the entire estate. The executrix in New York conceded that the property liable to the payment of the tax and that exempt therefrom should be so marshaled and distributed that the property in Iowa would be applied pro rata to every provision of the will. On the other hand, the defendant contended that the assets of the estate should be so marshaled as to exempt no part of the property in Iowa from the tax. The court said:

"That the widow is entitled by the express provisions of the will to take an undivided one third of the property located in Iowa, as well as of that located in New York, seems to us very clear. Being entitled to take it, she takes it exempt from the tax under the statute. It is also clear that, if she is entitled to a life estate in any 'rest and residue,' she is entitled to take that also exempt from any tax. How the 'rest and residue' can be determined in such case is a more difficult question. But the concessions of the plaintiff relieve us from the necessity of determining what her utmost right might be. As already indicated, she concedes that, after appropriating one third of the Iowa property for herself, as widow, the remaining two thirds should be first charged *pro rata* with the payment of all debts and legacies, and that her life estate in Iowa property should be

limited to the 'rest and residue' remaining after such application. We find nothing in the statute which would justify a larger claim against the plaintiff than she thus concedes. The exact situation here presented is not covered by the express terms of the statute; but the basis contended for by plaintiff responds to the spirit of the statute, and leaves little room for fair controversy."

The supreme court of Kansas, in *State v. Davis*, 88 Kan. 849 (129 Pac. 1197), construed a statute of that state so as to exempt the property in Kansas of a decedent who, at the time of his death, was a resident of another state, from the tax, provided the state of the domicile grants a like exemption, the purpose being to avoid double taxation. The court, in the course of its opinion, said:

"We think the spirit of the Kansas act is that, where property in this state owned by a nonresident at the time of his death has been subjected to an inheritance tax in the state of his residence, a similar tax ought not to be required here, except in cases where, if the conditions were reversed, and a nonresident of this state had died, owning the same character of property in the other state, a payment there would be exacted. That spirit is effectuated by considering that the exemption of the Kansas statute operates for the benefit of the estate of a resident of any other state, the law of which would not exact an inheritance tax with respect to similar property in that state, owned by a resident of Kansas at the time of his death, no matter how dissimilar the statutes may otherwise be. In other words, the exemption made by the laws of another state is to be regarded as like that of the Kansas statute, in any circumstances in which, if the conditions were reversed, it would have a like operation."

The total net value of the estate in Nebraska, upon the basis of expenses and deductions made in that state, is

$110,986.37, and in Iowa, upon the same basis, $84,428.50; but we do not undertake to ascertain the amount of the residuary estate, nor the amount of tax to be paid in this state. All of these matters will be left to be ascertained and settled by the court below, upon the basis and in harmony with the views expressed in this opinion.

IV. The right of the executor in Nebraska to make the following deductions in Nebraska, and to hold same exempt from the payment of a tax in this state, is challenged by counsel for appellant. They are as follows:

5. TAXATION: collateral inheritance: "debts:" Federal and succession taxes.

$410.65, repairs made and claimed by appellant to have been contracted for on the Nebraska farms after the death of testatrix; $317.61, income tax paid the United States government; and $3,268.14, Federal inheritance. The deductions allowed in this state are such as come within the provisions of Section 1481-a2, which is as follows:

"The term 'debts' as used in this act shall include, in addition to debts owing by the decedent at the time of his death, the local or state taxes due from the estate in January of the year of his death, a reasonable sum for funeral expenses, court costs, the cost of appraisement made for the purpose of assessing the collateral inheritance tax, the statutory fees of executors, administrators, or trustees estimated upon the appraised value of the property, the amount paid by the executor or administrator for a bond, the attorney fee in a reasonable amount, to be approved by the court, for the ordinary probate proceedings in said estate and no other sum; but said debts shall not be deducted unless the same are approved and allowed by the court within eighteen months from the death of the decedent, as established claims against the estate, unless otherwise ordered by the judge or court of the proper county."

The question whether inheritance taxes due other states upon the succession to property of a decedent whose

domicile, at the time of his death, was in this state, and
Federal income and inheritance taxes, shall be allowed as
deductions has not previously been before this court. The
Supreme Court of Connecticut, in *Corbin v. Baldwin,* 92
Conn. 99 (101 Atl. 834), held that the amount of inheri-
tance and state taxes paid in New Jersey, together with in-
come taxes paid to the government, should be deducted in
ascertaining the amount of the estate subject to tax. In
*Hooper v. Shaw,* 176 Mass. 190 (57 N. E. 361), the Supreme
Court of Massachusetts held that Federal inheritance taxes
should be deducted; and the Supreme Court of Pennsyl-
vania, in *Knight's Estate,* 261 Pa. 537 (104 Atl. 765), held
to the same effect.

On the contrary, the New York court, in *In the Matter
of the Estate of Bierstadt,* 178 App. Div. 836 (166 N. Y.
Supp. 168), held that Federal inheritance taxes should not
be deducted. As we understand it, state inheritance taxes
are not figured as deductions by the United States treasury,
in the computation of the Federal tax. It seems to us that
our statute limits the deductions that may properly be
made, to the items referred to in Section 1481-a2, supra.
Neither the succession nor Federal inheritance taxes are
debts against the estate, but are taxes imposed upon the
right of succession, and are not allowable as deductions,
under our statute. Nor are they to be treated as expenses
of administration. *People v. Union Trust Co.,* 255 Ill. 168
(99 N. E. 377). The item of indebtedness for repairs was
apparently incurred some time before the death of testa-
trix. It was, therefore, a valid claim against her estate, and
should be allowed as a deduction.

The income tax and state tax paid in Nebraska, if the
latter became a lien upon the real property of decedent in
that state prior to her death, should, we think, be allowed

as deductions. While neither were due and payable at the time of her death, the amount of the state taxes had been ascertained, and it was the duty of the executor to make a return of the income for the year expiring January 31, 1916. Testatrix died in December. If, however, the item mentioned includes taxes levied after the death of testatrix, they should not be allowed as deductions. As the decree of the court below is not in harmony with the views herein expressed, it follows that, in so far as the same does not accord therewith, it is set aside and modified. We have not undertaken to compute the tax upon the basis indicated, nor are we sure that the record before us would permit this to be done. The cause will, therefore, be remanded to the court below, with directions to ascertain and compute the tax due the state of Iowa in harmony with this opinion, and, if necessary, to take further evidence to enable this to be done. If, however, counsel desire, and agree upon a decree, they may have same entered in this court.—*Reversed in part and remanded.*

6. TAXATION: collateral inheritance: "debts:" income and current taxes.

LADD, C. J., WEAVER and GAYNOR, JJ., concur.