CHARLES A. WELCH & others *vs.* JULIUS ADAMS & others.

Suffolk.    January 21, 1890 — June 23, 1890.

Present : FIELD, DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ

*Ancillary Administration — Payment of Legacy — Interest — Widow — Bill for Instructions by Executor.*

The executor of a deceased non resident, to whom ancillary letters testamentary have been granted in this Commonwealth, may bring a bill for instructions in this court, if the personal estate found in this Commonwealth is ample for the payment of debts and legacies, the legatees and residuary legatees being within the jurisdiction.

A pecuniary legacy to the widow of a testator domiciled in New Hampshire when he died, given and accepted in lieu of dower, homestead rights, and a distributive share in the estate, to be paid to her "as soon as convenient" after his death, and accompanied by a devise of productive real estate here of which she was dowable, will not bear interest until the end of one year from the death of the testator.

This court will, in its discretion entertain a bill brought by an executor for instructions as to the payment of interest on a deposit in a trust company on account of a large pecuniary legacy, although the Probate Court might instruct him, or otherwise pass upon the question, in ordering a final settlement and distribution of the estate.

A legatee under a non-resident's will admitted to probate in another State is not required to accept payment of his legacy when tendered by the executor, although the latter, pending probate proceedings here, has been appointed a special administrator of the personal estate found in this Commonwealth, and is afterwards granted ancillary letters testamentary.

Legatees are not bound to accept payment of their legacies in instalments when tendered by executors without an order of the Probate Court for partial distribution.

The interest upon a legacy remaining unpaid after the expiration of one year from the testator's death is to be computed at the legal rate, without regard to the rate actually realized or obtainable from safe investments, but not with annual rests.

BILL IN EQUITY, filed September 10, 1888, by the executors of the will of Isaac Adams, against Julius Adams, who was his son and the administrator with the will annexed of the testator's wife, and against the other two sons of the testator, who were the residuary legatees under the will, for instructions. *Knowlton*, J., reserved the case for the consideration of the full court. The facts appear in the opinion.

*W. Gaston & F. E. Snow*, for Julius Adams.

*M. Storey & J. L. Thorndike*, for the residuary legatees.

DEVENS, J. The plaintiffs, who bring this bill for instructions, are the executors of the will of Isaac Adams, which is dated May 13, 1879. Isaac Adams had his legal domicil in the State of New Hampshire, and died on July 19, 1883. His will having been admitted to probate in New Hampshire, the present plaintiffs have there received letters testamentary, under which they have duly qualified, the decree of the proper Probate Court having been finally affirmed by the Supreme Court of that State on August 6, 1885. All the testator's personal estate, except household effects, farming implements, etc., was in Massachusetts. On November 26, 1883, by reason of the necessary delay in granting letters testamentary in respect to the testator's personal estate in this Commonwealth, which was large, the plaintiffs were duly appointed special administrators thereof, with authority to take charge of his real estate, and gave bond for the faithful performance of their duties as such. On March 7, 1887, upon the petition of the plaintiffs, after due notice, it was ordered by a decree of the Probate Court for the county of Suffolk, that a copy of the will and the probate thereof in New Hampshire, duly authenticated and presented to that court, should be filed and recorded, and letters testamentary be granted to the plaintiffs. Pub. Sts. c. 127, §§ 15-17. From this decree an appeal was taken; the decree was affirmed on October 5, 1887, by this court; and the plaintiffs, having here received letters testamentary, have qualified and proceeded to act under them.

By this bill the plaintiffs seek instructions as to the payment of two legacies given by the will, or rather of the interest claimed to be due thereon, one being a legacy of $64,000 to Mrs. Anna R. Adams, wife of the testator, and the other of $5,000 to Julius Adams, his son. Mrs. Adams having deceased since the death of the testator, Julius Adams has been appointed her administrator with the will annexed. It is found that the personal estate in the hands of the executors is more than sufficient, after paying all debts and other legacies, to pay all sums which are claimed on account of these legacies.

By the Pub. Sts. c. 127, § 34, and c. 156, §§ 5, 6, the Supreme Judicial Court and the Probate Court have concurrent jurisdiction of a petition by an executor for instructions as to the construction of the will; and from the decree of the Probate Court any party aggrieved may appeal to this court.

Assuming for the moment that the subjects on which the bill requests instructions present inquiries such as in ordinary cases, where the testator has been domiciled here and original administration has been here granted, could properly be addressed to this court, it is to be considered whether the matter is in any way affected by the fact that the testator was domiciled in New Hampshire, and that the original probate of his will was in that State. In dealing with personal property here found, the executors are accountable to the Probate Court in this Commonwealth, and there is no duty imposed upon them to transfer it or its proceeds to New Hampshire, to be there administered, even after the payment of the debts in this State. On the contrary, it would be irregular so to do, unless an order to that effect was made by the Probate Court.

The Pub. Sts. c. 138, § 1, provide, in the case of administration taken in this State on the estate of an inhabitant of any other State or country, that " his estate found here shall, after payment of his debts, be disposed of according to his last will, if he left any, duly executed according to law "; otherwise, his real estate is to descend according to the laws of this Commonwealth, and his personal estate is to be distributed and disposed of according to the law of the State or country of which he was an inhabitant. Section 2 provides that, after payment of the debts in this Commonwealth, " the residue of the personal estate may

be distributed and disposed of in manner aforesaid by the Probate Court; or, in the discretion of the court, it may be transmitted to the executor or administrator, if any, in the State or country where the deceased had his domicil, to be there disposed of according to the laws thereof." Sections 3, 4, and 5 provide for the settlement of the estate in this Commonwealth if it is insolvent, and are intended to enable creditors here to obtain an equal share, in proportion to their respective claims, of the whole property, whether within or without the Commonwealth. This statute certainly gives the right to the Probate Court here to dispose of the estate according to the will as originally proved in another State. In leaving it in its discretion to determine whether, after the payment of debts here, the residue of the personal property shall be transmitted to another jurisdiction, the statute is only declaratory of a general principle often acted on. *Stevens* v. *Gaylord,* 11 Mass. 256, 264. *Harvey* v. *Richards,* 1 Mason, 381. *Ewing* v. *Orr Ewing,* 9 App. Cas. 34, 39. *Ewing* v. *Orr Ewing,* 10 App. Cas. 453, 502. It is said by Mr. Justice Story, in discussing the question whether a court in which ancillary administration had been granted ought to entertain a decree for final distribution of the assets among the various claimants having equities or rights in the fund, that such court is not incompetent to act upon the matter, and that whether it will do so, or whether it will transmit the property to the forum of the domicil of the deceased, is a matter of judicial discretion, dependent on the circumstances of the case. "There can be," he adds, "and ought to be, no universal rule on the subject. But every nation is bound to lend the aid of its own judicial tribunals for the purpose of enforcing the rights of all persons having a title to the fund, when such interference will not be productive of injustice, or inconvenience, or conflicting equities, which may call upon such tribunals for abstinence in the exercise of the jurisdiction." 1 Story, Eq. Jur. § 589.

If the property had been transmitted to another jurisdiction, this court would not undertake to construe the will or determine how the estate should be distributed, or how interest should be computed on the legacies. *Emery* v. *Batchelder,* 132 Mass. 452. But the personal property is here, and was so when the testator deceased; it is ample for the payment of the legacies immedi-

ately in question, as well as of all other legacies or debts, whatever may be the interest thereon ; the legatees are also here, as well as the residuary legatees, who are the only persons who can be affected by any determination as to these legacies, and no such case is presented as might be if the marshalling and distribution of the whole estate was now to be considered. Under such circumstances, it does not constitute a valid objection to the giving of instructions, that the testator was domiciled in another State, or that his will was originally proved there. If it be urged that the Probate Court may yet, in the exercise of its discretion, order the personal property to be transmitted to New Hampshire, and thus that any instructions that we might give would become inoperative, it is sufficient to say that it is not to be presumed that it would do so when all the circumstances exist which render the disposition of the property, so far as the legatees are concerned, more appropriate here than elsewhere, and when important rights of opposing parties have here been settled upon full notice, especially so when any order for this transfer of the funds would be subject to review by this court sitting as the Supreme Court of Probate.

The first question presented by the executors, according to the report, is whether the legacy by Isaac Adams to his wife carries interest from the date of the testator's death, or from the end of one year thereafter. This bequest was of "the sum of sixty-four thousand dollars in money, to be paid her as soon as convenient after my decease," and was accompanied by a devise to her of five pieces of productive real estate in Massachusetts, of which she was dowable. These provisions, by the above devise and bequest to his wife, are declared to be in full satisfaction "of her dower and homestead rights in my estate, and of all distributive share or rights whatsoever therein." In *Pollard* v. *Pollard*, 1 Allen, 490, it was held that a widow to whom a legacy was given in lieu of dower was entitled to be paid in full, in case of a deficiency of assets, in preference to legatees who were mere volunteers, and also to receive interest thereon from the death of the testator, if he had provided no other means for her support during the first year after his death ; and this upon the ground that she is to be regarded as a purchaser for value by reason of her relinquishment of her important rights in her hus-

band's estate. The question here presented is, however, to be decided according to the law of New Hampshire. It is not merely a question of how property shall be here administered, but what is the construction and effect of the will, and what was the intent of the testator by its provisions. The construction of the will and the distribution thereby made of the testator's personal estate are to be governed by the law of his domicil. *Sewall* v. *Wilmer*, 132 Mass. 131. Pub. Sts. c. 138, § 1.

By the law of New Hampshire, as of Massachusetts, the wife is treated, in accepting a provision by will, as a purchaser for value, and the general rule which applies in the case of creditors who receive a legacy in satisfaction of a debt, and who are held entitled to interest from the death of the testator, would apply where no different intent is shown. *Towle* v. *Swasey*, 106 Mass. 100. *Williamson* v. *Williamson*, 6 Paige, 298. But by the law of New Hampshire, as of Massachusetts, while the widow is a purchaser for value, she also has a right to determine whether she will accept the provision made, and to accept or reject it as she may choose. Gen. Laws of N. H. of 1878, c. 202, §§ 9, 18; c. 193, § 13. If she accepts it, she must do so upon the terms and conditions on which it is made. She can have only what the will gives her, and in the mode in which it gives the property bequeathed to her. The precise point decided in *Pollard* v. *Pollard, ubi supra*, does not appear to have been decided in New Hampshire. In *Loring* v. *Woodward*, 41 N. H. 391, it is said, that to the general rule there laid down, that a pecuniary legacy payable generally without designation of any time of payment is payable at the end of a year from the death of the testator without interest, and if not then paid, with interest after the end of the year, there is one exception, which is in favor of minor children of the testator, who are entitled, unless other provision is made for their support, to interest upon their legacies from the date of the testator's decease. It is argued, therefore, by the residuary legatees, that in New Hampshire no such exception exists in favor of the testator's widow as has been held to exist in Massachusetts, as otherwise the learned Chief Justice of New Hampshire, who delivered the opinion, would not have failed to state it. We shall not have occasion to consider this contention, or whether the language

used is fairly to be construed as holding that no other exception to the general rule than that specified actually exists in New Hampshire.

We are of opinion that upon other grounds the position taken by the residuary legatees is correct. In *Pollard* v. *Pollard*, it is clearly implied that, if other provision is made by the testator for the support of the wife which will avail her during the year following her husband's decease, she would not be entitled to interest from that time. The legacy to Mrs. Adams was accompanied by a devise to her of five pieces of productive real estate, to the considerable income of which she became at once entitled, and the case is not presented of a widow left without other means of support than her legacy. In *Loring* v. *Woodward, ubi supra,* it is said that minors are entitled to interest upon their legacies from the decease of the testator only in those cases where no other provision was made. If, therefore, it can be held that in New Hampshire the same exception exists in favor of the widow as to the allowance of interest that exists in this Commonwealth, it cannot be reasonably doubted that it applies only in those cases where other provision is not made for her support. Again, it is said in *Loring* v. *Woodward,* that the general rules there laid down on the subject of interest and income do not apply where specific directions are given by the will, or where a different intention is to be inferred from its provisions. The inference is fairly to be drawn from the provisions of Isaac Adams's will that he did not intend that the payment of the legacy should be immediate. If a will is silent as to the time when a legacy is to be paid, one to whom such a legacy is bequeathed, and who stands in the position of a purchaser for value, is entitled to have the time of payment determined by the legal presumption of the intent of the testator. If a time were specified for its payment, he could make no claim for any delay in its payment except after the expiration of the time specified. By the terms in which the legacy to Mrs. Adams was given, no time for its payment was specifically stated, but the provision that it shall " be paid her as soon as convenient after my decease," distinctly shows that the legacy would not be paid at once, but that its payment would be governed by the convenience of the

estate. The rule that legacies draw interest only after the expiration of a year contemplates that such a time is a reasonable one for the collection of assets and reducing them to money. By accepting her legacy to be paid at the convenience of the estate, for that is its fair interpretation, the widow consented to wait for the expiration of the usual time for its payment. It follows that she would not be entitled to interest until the end of a year, and such instruction is given accordingly.

The next question reserved for our consideration by the report, and on which the bill requests instructions, is whether the interest upon both the legacies of $64,000 to the widow and of $5,000 to Julius Adams is affected by a deposit made on August 8, 1887, with the New England Trust Company, to the credit of Julius Adams, of an amount equal to these sums, and also in what manner and at what rate interest on these sums shall be computed. The inquiry thus presented does not involve the construction of the will, but concerns the duty of the executors under it, and the effect of the acts which they have already done. It is well established, that trustees may ask the instruction of the court, not merely as to the construction of the instrument under which they act, but also as to their duties under it. *Hyde* v. *Wason,* 131 Mass. 450. Nor is there any reason why executors and administrators might not do the same, except where the matter is one which can be more appropriately dealt with in the Probate Court, especially in the settlement of their accounts. *Treadwell* v. *Cordis,* 5 Gray, 341, 348. Whenever a trustee doubts as to his safety and security in complying with a claim of the *cestui que trust,* his only prudent and safe course is to wait for the directions of a court of equity. *Dimmock* v. *Bixby,* 20 Pick. 368.

While our statutes have established an elaborate system of procedure for the administration of the estates of deceased persons in the settlement of the accounts of executors, the jurisdiction of the Probate Court is limited to these, and it cannot upon a hearing of that character give directions as to how future accounts shall be rendered, or the duties of executors performed. *New England Trust Co.* v. *Eaton,* 140 Mass. 532. *Lincoln* v. *Aldrich,* 141 Mass. 342. The Probate Court may indeed,

upon proper petition, concurrently with this court, determine all questions arising under wills or relating to their construction, any party aggrieved by the decision of that court having a right of appeal to this. Pub. Sts. c. 127, § 34; c. 156, §§ 5, 6-11. *Swasey* v. *Jaques,* 144 Mass. 135. It may be that the inquiry which the executors seek now to have determined could be passed upon and decided in the Probate Court on the final settlement of their account, by the order for the payment of debts and legacies, and of distribution to be passed thereon, from which order an appeal could be taken by any party aggrieved to this as the Supreme Court of Probate. Yet in the situation in which the executors find themselves by the delays and embarrassments of the case, and by the accumulation of interest on the funds they have collected, a majority of the court are of opinion that the executors may properly ask instructions upon the matter thus in question. Whether such a bill shall be entertained, or whether the parties interested shall be left to the other remedies provided, is, to some extent, a matter of discretion. The inquiries submitted have been fully argued by the legatees and the residuary legatees, who are the only persons interested, and both parties have desired that they should be definitely passed upon.

On August 8, 1887, the plaintiffs, after some correspondence with Julius Adams, who had become the administrator with the will annexed of the estate of his mother, who had then deceased, deposited with the New England Trust Company the amount of the two legacies of $64,000 and $5,000 (together with another sum for rents collected, not necessary to be here considered) to the credit of Julius Adams. These sums were deposited without any interest being included, the matter of interest having been the matter in dispute between Adams and the executors. Adams never authorized or ratified this deposit with the Trust Company, refused to receive the deposit-book, and has in no way recognized the deposit, which bore interest at the rate of two and a half per cent. He had been informed before the deposit was made, he having declined to receive these sums without interest, that they would be thus deposited, unless he should receive them, or designate some other place for their deposit. On behalf of the residuary legatees, it

is contended that the executors had a right to require Julius
Adams to receive, on account of the legacies, the principal of
the amounts due, that he was not at liberty to refuse to receive
any portion unless the whole sum due was paid, and that the
deposit of these sums with the Trust Company was a valid ap-
propriation in part satisfaction of the legacies.　It is conceded
by them that the legacies carried interest from the end of a
year after the testator's death, and therefore that the sums de-
posited on account of the legacies were less than the amounts
due at that time.

The first inquiry which we consider in this transaction is
whether the plaintiffs, as executors, were then in a position
rightfully to make appropriations for the payment of legacies.
If they were not, Adams could not be called upon to deal with
them, nor be bound to assent to their acts.　On August 8, 1887,
their situation was somewhat peculiar.　The will of Isaac
Adams had been finally admitted to probate in New Hampshire,
and they were lawfully appointed executors in that State on
August 6, 1885.　Previous to this time, the same gentlemen had
been appointed special administrators in this Commonwealth, on
November 26, 1883.　On March 7, 1887, the Probate Court of
Suffolk County had admitted to probate a copy of the will
proved in New Hampshire, and from this decree Julius Adams
had appealed.　This appeal was pending until October 5, 1887,
when the decree of the Probate Court was affirmed, but letters
testamentary were not issued to the plaintiffs until September
17, 1888.　On August 8, 1887, the plaintiffs were not executors
in this Commonwealth.　As executors of a foreign will, they had
no right to act here and to dispose of the estate here.　In order
that they should have this authority, it was necessary that the
will should have been here admitted to probate, and that letters
testamentary should have been issued to them.　*Campbell* v. *Shel-
don*, 13 Pick. 8.　Pub. Sts. c. 127, § 7.　As special administrators,
whose duty is only to take care of and to preserve property until
it can be regularly administered, they certainly had no author-
ity to pay legacies.　While the plaintiffs acted, apparently, as
executors appointed in the State of New Hampshire, describing
themselves as co-executors before any appointment of them as
such in this Commonwealth, the two sums deposited " were paid

out of the personal estate of the testator in Massachusetts, which had come to the hands of the plaintiffs as special administrators." The Probate Court had never authorized or directed the transfer of any part of the property held by the plaintiffs as special administrators to themselves as executors in New Hampshire. In the account subsequently filed by the plaintiffs, on November 23, 1888, as executors in this Commonwealth, they claim to be allowed for the payment of these sums. Julius Adams was not called upon to deal with the plaintiffs while occupying so ambiguous a position, or to recognize them as having authority, as executors under the laws of New Hampshire, to deal with property here without having been authorized to do so by this Commonwealth. Until in its discretion the Probate Court directed the personal estate here found to be transferred to the foreign jurisdiction, executors there could not rightfully deal with it.

Many acts may, without doubt, be done by one as executor previous to his appointment as such, which, if in themselves not illegal, and such as an executor may properly do, might be validated by his subsequent appointment relating back to the time of doing the acts. No person, however, is required to deal with one who may thereafter be appointed as executor trusting to the chance that he will be appointed, or to consent to appropriations made by him in the anticipation that they may thereafter be lawfully made. The case as here presented has also this peculiarity, that if the appropriation made by the plaintiffs while executors in New Hampshire is to be treated as authorized, so as to bind Julius Adams, in whose favor the deposit was made, it is so because of their subsequent appointment in Massachusetts. Acts done in one capacity are thus treated as authorized by a subsequent appointment of the actors to another capacity. The plaintiffs are now attempting to administer the estate in Massachusetts; this is the foundation of their bill for instructions, yet the act concerning which instruction is asked was done while they were executors in New Hampshire only. At the time when the plaintiffs undertook to offer payment of the legacies, to appropriate a sum therefor, and to make a deposit thereof, they had no authority to do so in such manner that the rights of the legatees would be affected.

Nor, irrespective of this matter of the plaintiffs' authority, are we of opinion that legatees are bound to accept a payment by instalments which should operate *pro tanto* to diminish their claims. That it is an exceedingly convenient mode often of administering an estate to make partial payments to creditors or legatees when the rights of creditors are satisfied, may be admitted. Orders to this effect are often made by courts, independently of statute authority, for the more convenient distribution of the estate, as the funds accumulated in administration, by the collection of debts or the reduction of securities into possession, would otherwise be substantially idle. In this Commonwealth the practice is recognized by statute, and the probate courts are authorized to order partial distribution of the funds of estates in the course of administration. Pub. Sts. c. 136, § 21. If such an order is obtained, there would be much force in contending that interest should not, after such an order, or proper information of such an order, be allowed, except on the balance of the debt or legacy which would remain after the application of the partial payment was or might have been made. No such order was passed or applied for, and the legatee or creditor ought not to be expected to receive payment of his legacy or debt in such instalments as the executor may, in his own discretion, see fit to apportion to him. The existence of the power in the court to order partial payments, and its frequent exercise, do not indicate that the executors have any such power, but rather otherwise. If the legatee or creditor should consent to receive partial payments, which no doubt are often made without any order of court, it certainly would be right that interest on his claim should be diminished. In the case we are considering, the two sums offered to Julius Adams, and deposited to his credit, were refused by him, and it is conceded that they did not equal, interest included, the amount of the legacies to which, in his own right and that of his mother, he was entitled. Even if the offer was made that Julius Adams should receive these sums for the legacies, leaving the question of interest upon them open for further consideration or litigation, he was under no obligation thus to accept them.

These views render it unnecessary to consider several points which have been quite fully discussed ; viz. what was the true

construction of the correspondence between the executors in some other respects, and whether Julius Adams might safely have accepted the offer of the executors without waiving his right to oppose the probate of his father's will in this Commonwealth, which he was then contesting, and certain other claims made by him.

It is urged, in connection with the claim for interest on these legacies, that the conduct of Julius Adams in opposing the probate of his father's will in New Hampshire and in this Commonwealth was litigious and unreasonable. So far as the legacy to Mrs. Adams is concerned, her estate should certainly not be diminished by any acts done by her son in his individual capacity. The facts are not before us upon which we could decide whether his conduct was litigious, and his resistance to the probate of the will unwarrantable, even if we could hold that his claim for interest should be affected thereby. It is without doubt true, that where the settlement of an estate is delayed by legal controversy, and where funds are accumulated under such circumstances that they cannot be permanently invested, loss may be occasioned to the residuum of the estate. The contestant who disputes a will is still, however, in the exercise of his legal rights. It was held, therefore, in *Kent* v. *Dunham*, 106 Mass. 586, that the fact that legatees had caused delay by unjustifiable proceedings, embarrassing the executors in the settlement of the estate, was inadmissible for the purpose of defeating their claim to interest. On the other hand, we can perceive no ground for the claim on behalf of Julius Adams, that interest should be computed on these legacies after the expiration of one year from the death of the testator, with annual rests, and thus that the legatees should receive compound interest.

The question remains to be determined at what rate interest shall be computed. It is urged, on behalf of the residuary legatees, that it should be something less than the legal rate, and that certainly this should be so after the deposit made by the plaintiffs, upon which only two and a half per cent was to be allowed. In the view we have taken, the matter of interest is not affected by the deposit. That interest at the legal rate is payable after one year from the testator's death is well established, as a general rule, in Massachusetts and New Hamp-

shire. *Loring* v. *Woodward*, 41 N. H. 391. *Kent* v. *Dunham*, 106 Mass. 586. *Ogden* v. *Pattee*, 149 Mass. 82. Even where the estate could not have been reduced to money within that time, or where the administration had not been taken for a considerable time after the death of the testator, it would still be allowed to the legatee as an incident and accretion to the legacy. *Lamb* v. *Lamb*, 11 Pick. 371. *Ogden* v. *Pattee*, 149 Mass. 82. *Martin* v. *Martin*, 6 Watts, 67. This allowance is made, not merely because it will be presumed that the estate will, after the year has expired, have actually made this sum, but also because, as it would be difficult, if not impossible, to investigate how much interest had been made in such cases, it is a reasonable rule to adopt that rate of interest which the law has fixed where none other is stipulated for. It is urged that it is a matter of public knowledge that no interest can now be obtained as high as six per cent on any safe investment; that such an allowance should no longer prevail; that the court should determine either directly, or with the aid of a master, what could reasonably have been obtained; and that this only should now be allowed. It is probable that the rate of interest does not so nearly represent now what can be earned by a safely invested fund as it did when it was originally established by statute as the legal rate, and that it would be difficult now to obtain it. But as it is inferred that, where no time is specified for the payment of a legacy, it is not to be paid until the end of a year from the death of a testator, so it is a reasonable inference that the testator intended, if the legatee did not receive it until some time after that period, that he should then receive it with the interest allowed by law. His gift fairly imports this, because that is the rate where a debt or payment which is due *in præsenti* is deferred.

This view is not in conflict with *Williamson* v. *Williamson*, 6 Paige, 298, and *Healey* v. *Toppan*, 45 N. H. 243. The question in these cases was not between legatees of specified sums and the estate, but between those who were the legatees, one class of whom were entitled to an estate for life in the legacy, and the other to the remainder. As between them there was no doubt that the tenant for life, after the fund was actually formed, was entitled only to the interest or income which it produced. In

determining what should be the basis of apportionment between them before the settlement of the estate, and before it was actually formed and productive, it was determined that five per cent upon it, as ultimately ascertained, would be right, as it represented the income which might have been obtained. It by no means follows that what is right as between legatees interested in different proportions in the same fund, is a proper rule between a legatee of a definite sum and the estate of the testator.

It is urged that by the English rule less than the usual or legal rate of interest is often allowed, and that the amount of interest which legatees are entitled to recover is regulated by the court of chancery with reference to the amount which executors could have made, and that this rate has been diminished from time to time by reason of the change in the value of the interest upon money. *Beckford* v. *Tobin,* 1 Ves. Sen. 308, 311. *Guillam* v. *Holland,* 2 Atk. 343. *Wood* v. *Briant,* 2 Atk. 521, 523. *Sitwell* v. *Bernard,* 6 Ves. 520. The rule of the court of chancery appears from these cases to have been, that it could determine at its own discretion how much interest should be allowed, and even without inquiry into the circumstances of any particular case. *Sitwell* v. *Bernard,* 6 Ves. 520. No action could have been brought at common law to recover the amount of a legacy which was treated only as a direction to the executor. The remedy of the legatee was only in the ecclesiastical courts or the court of chancery. These courts have always assumed the right to determine the terms on which the beneficiary should receive it. This is given as one of the reasons why an action at law should not be maintained for it. *Deeks* v. *Strutt,* 5 T. R. 690. *Allen* v. *Edwards,* 136 Mass. 138. In this Commonwealth an action at law has long been the remedy to recover the amount of such a legacy. *Allen* v. *Edwards,* 136 Mass. 138, and cases cited. Such is the rule, we believe, in most, if not all, of the States of the Union. While in many cases interest has been recovered, none has been cited or is known to us where it has been at less than the legal rate. It has been recovered upon the same principle that it is awarded in any case where the payment of a debt due has been deferred. We have no reason to believe that the law of New Hampshire in this respect

differs from that which prevails in this Commonwealth, and we do not feel authorized to change the rule so long as the statute remains unchanged which fixes a rate of interest. *Kent* v. *Dunham*, 106 Mass. 586. *Ogden* v. *Pattee*, 149 Mass. 82. Pub. Sts. c. 77, § 3. *Wood* v. *Corl*, 4 Met. 203. *Loring* v. *Woodward*, 41 N. H. 391. Gen. Laws of N. H. of 1878, c. 232, § 2.

The executors are, therefore, instructed that the legacies of $5,000 and $64,000 are payable, with legal interest, in a year from the death of the testator.

*Instructions accordingly.*