Roger B. Brooks, administrator, *vs.* Titusville Trust Company, administrator.

Middlesex.    November 7, 1951. — March 4, 1952.

Present: Qua, C.J., Lummus, Ronan, & Spalding, JJ.

*Executor and Administrator*, Compensation, Ancillary administration, Accounts. *Probate Court*, Appeal.

On evidence relating to services performed by one as ancillary administrator of the estate of a nonresident and as attorney principally in finding property of the decedent here, in compromising claims for taxes asserted on the basis that the decedent had died domiciled here, and in turning over property of the estate to the domiciliary administrator, this court ordered the compensation allowed for such services in the ancillary administrator's account reduced by one third.

The allowance of an account of an ancillary administrator showing that he had transmitted the remaining personal property in his hands to the domiciliary administrator was in effect an order of the Probate Court for such transmission under G. L. (Ter. Ed.) c. 199, § 2.

A domiciliary administrator of a nonresident decedent, who was entitled under G. L. (Ter. Ed.) c. 199, § 2, to transmission of the remaining personal property in the hands of an ancillary administrator appointed here, was a person aggrieved by and entitled under c. 215, § 9, to appeal from a decree allowing the account of the ancillary administrator where the account contained an excessive charge for his services.

Petition, filed in the Probate Court for the county of Middlesex on March 7, 1951, for allowance of an account.

The case was heard by *Leggat*, J.

*C. N. Stoddard, Jr.*, for the respondent.

*E. O. Proctor*, for the petitioner.

Ronan, J. This is an appeal by Titusville Trust Company, domiciliary administrator with the will annexed of the estate of Paul Hyland Harris, from a decree of the Probate Court for the county of Middlesex, allowing the first and final account of the appellee, Roger B. Brooks, ancillary administrator with the will annexed of the estate of Paul Hyland Harris, alleged to be a nonresident, wherein

Mr. Brooks was allowed $6,000 for his services as attorney and as administrator.

The decedent died at Cambridge in this Commonwealth on May 16, 1949, leaving a will in which he described himself as of Titusville, Pennsylvania. The sole beneficiary was his mother, Ruth Hyland Harris, a resident of Titusville. She and another were named as executrixes but both declined to accept the appointment. The will was proved and allowed in the Register of Wills for Crawford County, Pennsylvania, on May 24, 1949, and letters of administration with the will annexed were issued to the appellant, hereinafter referred to as the trust company.

An attorney who represented the decedent's family and the trust company retained the appellee on May 27, 1949, to act as attorney in this Commonwealth for the estate. He thereafter acted as attorney until March 6, 1950, when he was appointed administrator with the will annexed by the Probate Court for Middlesex County upon a petition in which he described the decedent as of Titusville. He continued in that capacity until March 7, 1951 — the end of the one year period covered by his first and final account, which was allowed on June 7, 1951.

The decedent had lived for several years in a small apartment in Cambridge. It contained bundles of newspapers piled five or six feet high and all kinds of boxes and folders. It was in a very disorderly condition. Forty-four dividend checks amounting to $1,245 were found in various places in the apartment. Some of the envelopes containing these checks had not been opened. They were sent to the attorney for the trust company. The furniture in the apartment was sold for $43.50 and the books for $80. An automobile was sold for $225 after $100 had been paid for repairs and storage. The inventory prepared and filed by the appellee shows total assets of $109,694.72, but only a small part of them could be considered as subject to probate here. This last mentioned figure included certificates for shares of stock in corporations organized in States other than Massachusetts, and valued at $95,538.53. These

shares were not a part of the Massachusetts estate of the
decedent if he was not domiciled here as they were not
assets "found here" as provided by the statute, G. L.
(Ter. Ed.) c. 199, § 1, and should not be administered under
the provisions of c. 199 but should be administered accord-
ing to the law of the domicil of the testator. *Kennedy* v.
*Hodges*, 215 Mass. 112. The appellee testified that he was
required by the commissioner of corporations and taxation
to hold these securities pending the determination of the
controversy over the domicil of the testator and was ad-
vised by the commissioner to include a full list of the per-
sonal property in his inventory, which he did.

The principal work done by the appellee was settling the
liability of the estate for taxes claimed by the commissioner
to be due this Commonwealth. The commissioner con-
tended soon after the death of the decedent that the latter
died domiciled here. On November 1, 1949, he notified the
appellee that that was the ruling of the tax department.
He also notified the banks in which the decedent had ac-
counts not to pay out any sums until the matter of taxes
had been settled. The decedent so far as appears had never
paid any income taxes to the Commonwealth. The com-
missioner was claiming both succession and income taxes.
The appellee held several conferences with the commissioner
and his deputy. The trust company filled out and executed
various forms tending to show that the decedent was not
domiciled here and also showing the income received by the
decedent in 1948 and in 1949 up to the date of his death,
and also by his estate for the remainder of 1949. The total
income tax shown by these statements amounted to $853.27.
If the decedent was domiciled here the succession tax would
be $3,568.98. Tax liability was compromised for one half
of these sums and was settled with the consent of the trust
company which advanced the money by the payment of
$2,211.13 on June 5, 1950. The appellee on June 7, 1950,
mailed to "Titusville Trust Co. (Pa.) Admr. c.t.a. of Estate
of Paul Hyland Harris, and Admr. c.t.a. of Estate of Ruth
Hyland Harris, sole legatee," shares of stock and two bonds,

all of the value of $95,743.77, and on March 7, 1951, sent in
the same manner United States savings bonds and $460.06
in cash, all amounting to $3,020.31. None of these securities
was indorsed by the appellee. Both lots were received by
the trust company as administrator with the will annexed
of the estate of Paul Hyland Harris although it only sent a
receipt for the first lot. It thus appears that when the
appellee sent these securities to the trust company, approxi-
mately three months after his appointment, he had little or
nothing to do except to prepare and file his account and to
secure its allowance.

The appellee was paid $500 in December, 1949, on ac-
count of services, and in schedule B, item 19, credits himself
with the payment of $5,982 for services as administrator
and attorney, including expenses. There is no dispute that
the expenses amounted to $482, leaving a charge of $5,500
for services. His total charge therefore for services is $6,000.
Doubtless, he performed valuable services for which he is
entitled to fair and reasonable compensation. He spent
considerable time in searching the apartment and succeeded
in finding checks, cash, and securities. Most of the securi-
ties and some cash were in a safe deposit box in a Cambridge
bank. The appellee collected no dividends on the securities,
and did not indorse any of the securities or attend to their
transfer in the names of the new owners. He simply trans-
mitted the uncashed dividend checks and the securities to
the trust company. He did not prepare any tax returns.
He knew that he was not called upon to administer an estate
of approximately $109,000 and his fee which, he testified,
is "a little over 5 per cent, if it is on a percentage basis,"
and if reckoned at $20 an hour "it would run over $6,000,"
seems to us to be too high, even if we consider that he as-
sumed some responsibility relative to shares of stock which
were not to be administered here. *Richardson* v. *Wolcott*,
323 Mass. 693. We have before us all the evidence that was
before the Probate Court. We think that a fee of $4,000
would be fair and reasonable. The item of $5,982 should be
reduced to $3,982. *King* v. *Grace*, 293 Mass. 244. *Bearse* v.

*Styler*, 309 Mass. 288. *McLaughlin* v. *Old Colony Trust Co.*
313 Mass. 329. *McMahon* v. *Krapf*, 323 Mass. 118, 122–
123. *Wilson* v. *Askinas*, 325 Mass. 136, 138.

At the argument in this court the appellee filed a motion
that the appeal be dismissed for the reason that the trust
company as administrator with the will annexed of the
estate of Paul Hyland Harris is not a person aggrieved
within the meaning of G. L. (Ter. Ed.) c. 215, § 9. The
mother of the decedent, Ruth Hyland Harris, who was the
sole beneficiary under his will, died in July, 1949, domiciled
in Pennsylvania, and the trust company was appointed
there as administrator with the will annexed of her estate
but it did not appeal in that capacity in the present pro-
ceedings. It was suggested at the hearing by the judge that
distribution should have been made to the trust company
as the representative of the mother's estate and not to the
trust company as the representative of the son's estate.
Thereupon the appellee contended that the trust company
in the latter capacity had no standing. The judge, however,
allowed the account. The statute, G. L. (Ter. Ed.) c. 199,
provides in § 1 that the estate of a nonresident found here
shall be disposed of according to his last will, if any, and in
§ 2 that the residue of the personal property "in the dis-
cretion of the court . . . may be transmitted to the executor
or administrator, if any, in the state or country of which the
deceased was an inhabitant, to be there disposed of accord-
ing to the laws thereof." The judge had the power to order
the assets to be transmitted to the trust company as ad-
ministrator with the will annexed of the estate of Paul
Hyland Harris. *Stevens* v. *Gaylord*, 11 Mass. 256, 264.
*Welch* v. *Adams*, 152 Mass. 74. The allowance of the final
account of the ancillary administrator here showing the
transmission of the personal property to the domiciliary
administrator was in effect an order of the court that the
residue should be transmitted to the principal adminis-
trator. *Emery* v. *Batchelder*, 132 Mass. 452, 453. The
principle has since been generally adopted that the allow-
ance of an account showing the distribution of an estate

has the effect of a decree of distribution. *Palmer* v. *Whitney*, 166 Mass. 306. *Libby* v. *Todd*, 194 Mass. 507. *Knowles* v. *Perkins*, 274 Mass. 27. *Cannon* v. *Fahey*, 327 Mass. 245, 248.

Since the trust company was entitled to have the appellee turn over to it all that was due, it was under an obligation to its beneficiaries to secure all that the appellee should have transferred to it. The trust company as the administrator with the will annexed of the estate of Paul Hyland Harris was a party aggrieved. Its pecuniary interest was directly affected by the decree and it had a right to appeal. *Smith* v. *Sherman*, 4 Cush. 408, 411–412. *Martin* v. *Gage*, 147 Mass. 204. *Monroe* v. *Cooper*, 235 Mass. 33, 34. *Doane* v. *Bigelow*, 293 Mass. 406, 409.

It follows that the final decree must be reversed and a decree entered allowing the account as the first but not the final account of the appellee after the account has been modified by substituting in schedule B, item 19, $3,982 for $5,982, making a corresponding reduction in the total of that schedule, and setting forth a balance of $2,000 in schedule C. The motion to dismiss must be denied.

*So ordered.*