[No. 36925.   Department Two.   October 10, 1963.]

*In the Matter of the Estate of* CARL A. BLOMEEN, *Deceased.**

*Clarence S. Lind,* for petitioner Lundequist.

*Cook, Flanagan & Berst,* by *Charles G. Flanagan,* for respondents.

DONWORTH, J.—This matter is before us on an application for a writ of prohibition to the Superior Court for King County to prevent the entry of an order which would have the effect of removing the administrator with the will annexed in the estate of Carl A. Blomeen, deceased, and appointing the executor named in Mr. Blomeen's will in his stead.

The two parties involved in the litigation pending in the trial court are Ivar Lundequist, the administrator with the will annexed (referred to herein as petitioner), and Arthur Falk, who was named as executor in the will (herein referred to as respondent).

The material facts are not in dispute and may be briefly stated.

*Reported in 385 P. (2d) 540.

Carl A. Blomeen (herein referred to as the deceased) was a Swedish citizen who died in Sweden on April 18, 1962.

He had been born in Sweden and emigrated to the United States in 1911, leaving a wife and several children in Sweden. From 1911 to 1958, when he returned to Sweden (where he lived until his death), he resided continuously in King County near Kent.

The deceased executed his will in Seattle on October 11, 1956, and executed a codicil thereto on the following day. These documents were filed in the proper court in the city of Uddevalla, Sweden, and, by decree dated June 15, 1962, one Henry Friborg was appointed as administrator of the estate by the court in Sweden.

In the decedent's will and codicil, he left the residue of his estate one half to Arthur Falk and his wife, and the other half to Carl Martin and his wife, share and share alike.

With respect to his 4 children (who live in Sweden according to petitioner's supplemental affidavit), the deceased made the following provision:

"Having full knowledge of my children, [first name illegible] Blomeen, Tonheld Blomeen, Bartild Blomeen, Elsie Blomeen and being of the belief that they are deceased or otherwise provided for, I give, bequeath and devise no share whatsoever of my estate to said children or any of them."

The record does not disclose what property decedent owned in Sweden. The property located in King County consisted of a vendor's interest in an executory contract to sell certain real estate[1] and a substantial savings account in a Seattle bank.

November 29, 1962, Ivar Lundequist, the Swedish consul at Seattle, acting by request of Henry Friborg, petitioned the Superior Court for King County to admit to probate

---

[1]This court held in *In re Eilermann's Estate*, 179 Wash. 15, 35 P. (2d) 763 (1934), that such a contract was intangible personal property and was not subject to inheritance tax in this state when the deceased had her domicile in New Jersey.

as a foreign will the Blomeen will, which was "being probated in the courts of Sweden," and asked that he be appointed administrator with the will annexed.

This petition was heard on December 3, 1962, and an order was entered admitting the will to probate as a foreign will and appointing the petitioner as administrator with the will annexed. The petitioner duly qualified as such on December 5, 1962.

January 2, 1963, respondent (who was named executor in the will) filed a petition asking the court to remove Ivar Lundequist as the administrator c.t.a. and to appoint respondent as executor of the estate.

January 10, 1963, Lundequist filed a motion in the superior court to dismiss respondent's petition of January 2, 1963, and quash the citation. In his affidavit in support of the motion, Lundequist stated that the will was admitted to probate in the proper court in Sweden, that Henry Friborg was appointed as administrator c.t.a., and that Friborg requested Lundequist to apply for letters of administration c.t.a. as to the assets of the estate located in King County.

A week later, Lundequist filed a supplemental affidavit in support of his motion to dismiss, in which he stated, in part:

"That the Foreign Department in Stockholm, Sweden, has furnished the affiant as Consul additional information with reference to the inheritance laws of the Kingdom of Sweden. That affiant has a digest of the inheritance law entitled The New Inheritance as Outlined in Ten Points of Sweden. That said digest contains reference to the law in Sweden wherein it states that a parent domiciled in Sweden cannot disinherit his children and that the children are entitled to inherit what purports to be a proportionate share of fifty percent of the decedent's estate irrespective of whether or not said parent had executed a will giving the property to others. That the four children mentioned in his will are entitled under the laws of Sweden to inherit and if there are two other children not named in the will, they are also entitled to inherit.

"That the interest of the children of the deceased and the interest of Arthur Falk are in conflict and adverse to each other. That the laws of Sweden are applicable to the

interpretation of the will. That the interest of Arthur Falk being adverse and in conflict with the proper administration of the estate in Sweden, would be also hostile to the Administrator now administering the estate in Sweden.

" . . .

"That in view of the laws of Sweden and in view of the fact that the will is being probated in Sweden and that the probate is domiciled in Sweden, the administration of the estate in the State of Washington will have to be done in compliance with the laws of Sweden. That the Treaty between the United States and Sweden recognizes the proper procedure in probate as to the respective countries."[2]

The motion to dismiss was heard before the Honorable Henry Clay Agnew, one of the judges of the Superior Court for King County, who, at the conclusion of the hearing, stated in some detail his reasons for removing the administrator. In conclusion, Judge Agnew announced his decision on the matter before him as follows:

"I will remove the Administrator unless restrained by a writ. The Administrator With the Will Annexed will be removed and I will give you an opportunity to prove this will. This you can do by proving a photostatic copy of it which is already in the file. Then upon proof of the will, if it is proven, I will appoint the Executor executor of that will and not as an agency administration of somebody in Sweden."

In the petitioner's brief, his single assignment of error is stated as follows:

"The will being probated in Sweden having been properly admitted to probate under RCW 11.20.090 and Ivar Lundequist having qualified as Administrator With Will Annexed; Superior Court Judge Henry Clay Agnew is without authority and has no jurisdiction to probate as an original will a photostatic copy of the will now on file, and to appoint the Executor named therein. It is necessary that he be restrained from so doing. That said Judge's oral decision is arbitrary and contrary to law."

The question before us is not whether the superior court's announced reasons for removing the administrator with the will annexed were legally sufficient or not. The sole

---

[2]See *In re Chaoussis' Estate*, 139 Wash. 479, 247 Pac. 732 (1926).

question is whether the court has jurisdiction to remove Lundequist as administrator c.t.a.

█ If the superior court has jurisdiction to remove the administrator, it is immaterial whether a sufficient showing has been made in this case to justify such action (*i.e.* whether the court will abuse its discretion in taking the proposed action). In other words, if the court has such jurisdiction, we will not pass upon the question of whether the court may be abusing its discretion by entering an order removing the administrator in this case. We do not issue writs of prohibition where the petitioner has an adequate remedy by appeal or certiorari. *Adams v. Allstate Ins. Co.,* 56 Wn. (2d) 834, 355 P. (2d) 838 (1960); *Johnson v. Pate,* 54 Wn. (2d) 148, 338 P. (2d) 131 (1959); *In re Jones,* 39 Wn. (2d) 956, 239 P. (2d) 856 (1952). Nor do we in this case intend to intimate any opinion as to the merits of the controversy between the parties involved.

█ In our opinion, the superior court has jurisdiction to remove the petitioner as administrator c.t.a. and to appoint Arthur Falk as executor of the will in his stead under the provision of RCW 11.28.160, which provides:

"The court appointing any executor or administrator shall have authority for any cause deemed sufficient, to cancel and annul such letters and appoint other executors or administrators in the place of those removed."

Since the superior court had jurisdiction in the premises, the writ of prohibition will not issue.

There is one issue which we believe deserves some clarification at this time. Judge Agnew has stated that he will allow a photostatic copy of the will already on file to be proved and then will appoint Arthur Falk as executor thereof and "not as an agency administration of somebody in Sweden."

█ The will in question had already been admitted to probate in this state. It was proved under the provisions of RCW 11.20.090 as a foreign will. That the will was proved as a foreign will does not mean that its administration is subordinate to that of the administration in the jurisdiction

in which it was originally admitted to probate. *Alaska Banking & Safe Deposit Co. v. Noyes,* 64 Wash. 672, 117 Pac. 492 (1911).

Whether the will is now proved as an original will and again admitted to probate will not in itself change the nature of its administration. The confusion lies in the terms "domiciliary administration," "principal administration," and "ancillary administration." No agency relationship exists between the administrations of an estate undertaken in different jurisdictions even though different administrators may perform different functions. Each administration is independent with respect to the personal property and real property owned by the deceased located within its jurisdiction, but the personal property must be distributed by the court in each jurisdiction according to the laws of the deceased's domicile.

It would be difficult to find a better case discussion of relationship between principal and ancillary administrations than in *Rader v. Stubblefield,* 43 Wash. 334, 86 Pac. 560 (1906), where this court stated, at page 347:

"Appellant now contends that a will should first be probated in the courts of the state in which the testator was domiciled at the date of his death; that the principal administration must be conducted in said courts; that thereafter said will may be probated as a foreign will in any other state where the testator may have left property, either real or personal; and that in the latter state the administration will be ancillary only. While conceding that real property belonging to an estate must be administered according to the laws of the state of its situs, appellant further contends that all personal property must be administered according to the law of the domicile of the decedent; that by reason of these principles, the only valid probate of the will of Joseph Stubblefield in any Oregon court would be an original probate, and not one made upon certified copies from Washington; that the Oregon administration must necessarily be the principal administration, while the Washington administration would be ancillary thereto and could only be conducted for the purpose of (1) administering upon real estate in Washington according to the laws of that state, and (2) securing possession of the personal property in Washington and, after the payment of debts and

costs of administration in this state, remitting the remainder of the proceeds of said personal estate to the administrators or executors in Oregon for administration under the laws of that state. Although we will, in this opinion, point out certain distinctions from these contentions, there is no question but that in the main they are well founded in principle and sustained by authority. 14 Cyc. 21, and cases cited; Schouler, Executors (3d ed.), §§ 162-183; *Goodall v. Marshall* (11 N. H. 88), 35 Am. Dec. 472, with editor's annotations.

"On the subject, however, of the alleged distinctions arising between principal and ancillary administration, and as bearing upon the functions of each, we think the language used in *Harvey v. Richards*, 1 Mason 381, is especially pertinent here. In that case Mr. Justice Story, at page 415, said:

" 'I have no objection to the use of the terms principal and auxiliary, as indicating a distinction in fact as to the objects of the different administrations; but we should guard ourselves against the conclusion, that therefore there is a distinction in law as to the rights of parties. There is no magic in words. Each of these administrations may be properly considered as a principal one, with reference to the limits of its exclusive authority; and each might, under circumstances, justly be deemed an auxiliary administration. If the bulk of the property, and all the heirs and legatees and creditors were here, and the foreign administration were only to recover a few inconsiderable claims, that would most correctly be denominated a mere auxiliary administration for the beneficial use of the parties here, although the domicile of the testator were abroad.'

Adopting here the above argument of Mr. Justice Story, we think the administration of the Stubblefield estate conducted in Washington should be considered the principal one, and that any which it may become necessary to conduct in Oregon would be ancillary thereto. There is no reason why the courts of a state other than the domicile of a decedent could not, after the payment of costs and debts, administer and distribute the personal estate within their jurisdiction according to the laws of the state of such domicile. Indeed, in the exercise of a proper discretion, this would, under some circumstances, be a duty required of them.

" 'As a general rule assets remaining in the hands of an ancillary representative after paying the claims of local creditors will be transferred to the place of the domicile for distribution. This rule, however, is not absolute or in-

flexible, but on the contrary the transfer will or will not be made as the court may deem proper in the exercise of a sound judicial discretion according to the circumstances of the case. . . . The court may in its discretion order that the residue of assets remaining in the hands of an ancillary representative after paying the claims of local creditors be retained and distributed by him instead of being transmitted to the principal representative, and in a number of cases it has been held that under the circumstances of the particular case a retention of the assets was proper. But since the distribution of and succession to personal property, wherever situated, is governed by the laws of the state or country where the owner had his domicile at the time of his death, the distribution when made by the ancillary representative must be according to the law of the domicile.' 18 Cyc. 1235, 1236.

See, also, *Fretwell v. McLemore,* 52 Ala. 124; *Swearingen v. Morris,* 14 Ohio St. 424; *Succession of Gaines,* 46 La. Ann. 252, 49 Am. St. 324; *Welles' Estate,* 161 Pa. St. 218, 28 Atl. 1116, 1117."

Since the Blomeen will has already been admitted to probate by the Superior Court for King County as a foreign will, no useful purpose will be served by proving this same will as an original will and again admitting it to probate regardless of whether the petitioner is removed and Arthur Falk is appointed as executor to administer the will in regard to the assets of the estate that are within this jurisdiction.

Since we are of the opinion that the Superior Court for King County has jurisdiction to decide whether it will remove the presently appointed, qualified, and acting administrator c.t.a. of the estate of Carl A. Blomeen, deceased, and appoint the executor named in his will to administer the portion of the estate situated in King County in his stead, the writ of prohibition sought by the petitioner will not issue.

Writ denied.

OTT, C. J., WEAVER, ROSELLINI, and HAMILTON, JJ., concur.

---

December 2, 1963. Petition for rehearing denied.