In re Estate of Radu.

[Cite as In re Radu (1973), 35 Ohio App. 2d 187.]

(No. 32260—Decided August 23, 1973.)

*Mr. Fred H. Mandel* and *Mr. Morris I. Goldsmith,* for appellant Peter Pirvu, domiciliary executor.

*Mr. John R. Vintilla,* for appellee John R. Vintilla, ancillary administrator.

KRENZLER, J. On May 19, 1969, Mary Radu died domiciled in Florida. Her will and codicil were admitted to probate by the Probate Court of Broward County, Florida on June 2, 1969. On May 20, 1969, John R. Vintilla, appellee herein, applied to the Probate Court of Cuyahoga County for letters of administration in the estate of Mary Radu and these were granted on the same date. On September 3, 1969, appellee filed a final statement and a resignation as administrator in the Probate Court of Cuyahoga County, which was approved and accepted.

Also on September 3, 1969, appellee filed a copy of Mary Radu's will certified by the Probate Court of Broward County, Florida, and applied for appointment as ancillary administrator with the will annexed. This application was granted.

Mary Radu's will listed bequests of money to eight named persons, all residents of Rumania, in amounts which together totalled $5,300. The entire residue of her estate was left by a codicil to Peter Pirvu, the appellant herein, who was qualified as executor of Mary Radu's estate by the Probate Court of Broward County, Florida.

The amended inventory filed by the ancillary administrator in the Probate Court of Cuyahoga County showed funds in savings accounts in Ohio aggregating $20,736.-66. There was one claim against the estate in Ohio by a creditor in the amount of $276.10. Distribution of the bequests would thus leave a balance of $15,160.56.

On December 21, 1971 appellee made application to the Probate Court of Cuyahoga County for authority to distribute from the funds in his possession as ancillary administrator, directly to the legatees listed in the will, the money left to them. Appellant, Peter Pirvu, filed a "Petition in Opposition" to appellee's application asking that the appellee be directed to account for the funds in his possession and deliver these funds to him as domiciliary executor.

The matter was heard by a referee of the Probate Court who determined that direct distribution of the legacies was authorized by R. C. 2129.23 and that the appellee's motion

should be granted. The Probate Court journalized an order approving and adopting the referee's report and Pirvu has appealed to this Court from that order.

Appellant has two assignments of error.

I. That the Court erred in ordering that the testamentary bequests made to the nonresidents of the State of Ohio be paid directly by the ancillary administrator to the named legatees.

II. In that the Court erred in making no disposition of the residue of the funds in the hands of the ancillary administrator after payment of Probate costs and the claim of a creditor residing in Ohio.

Ancillary administration is provided for in R. C. Chapter 2129. The object of ancillary administration is to collect assets of nonresident decedents found within a state and to remit the proceeds to the domiciliary executor or administrator. Its principal purpose is to protect local creditors of nonresident decedents. However, in serving this purpose equitable principles are applied and creditors, distributees and legatees from other states must not be discriminated against. If the general estate is solvent and there are sufficient assets to pay all creditors, they are to be paid in full, but if not, assets are marshalled so as to produce equality among creditors and they are to be paid pro rata taking into consideration the whole estate and all of the liabilities. Further, creditors must be paid before distributees and legatees. If there are not enough funds to pay all of the legatees and distributees, specific bequests have priority over general bequests. See *In re Estate of Hirsch* (1946), 146 Ohio St. 393; *Williams' Administrators* v. *Weltons' Administrator* (1876), 28 Ohio St. 451, 466; *In re Estate of Kelley* (1940), 68 Ohio App. 51, 60.

R. C. 2129.23 (formerly §10511-25 General Code) provides:

"When the expense of the ancillary administration of a nonresident decedent's estate, including such attorney's fee as is allowed by the probate court, all public charges and taxes, and all claims of creditors presented as provided in §2129.12 of the Revised Code have been paid, any resi-

due of the personal estate and the proceeds of any real estate sold for the payment of debts shall be distributed by the ancillary administrator as follows:

"(A) with the approval of the court such residue may be delivered to the domiciliary administrator or executor.

"(B) If the court orders, such residue shall be delivered to the persons entitled thereto."

In his first assignment of error appellant argues that R. C. 2129.23(B) should be construed to permit distribution only to resident legatees or in cases of a bequest of specific property to either resident or nonresident legatees. Appellee argues that the statute permits the distribution of legacies of any kind, with no distinction between residents and nonresidents.

A specific legacy or a bequest of specific property is a bequest of some particular thing or portion of a testator's estate which is so described in the will as to be distinguished from other articles of the same general nature in the estate. *In re Estate of Mellott* (1954), 162 Ohio St. 113. A bequest of a specified sum of money is not a specific bequest unless it is designated to be taken from a particular source, such as the sale of specified real estate, see *In re Estate of Kelley* (1940), 68 Ohio App. 51, or from a designated bank account.

The legacies in Mary Radu's will were of sums of money without regard to source. They were therefore general legacies.

The issue in this case is thus clearly defined: whether R. C. 2129.23 should be interpreted to permit distribution of general bequests to nonresident legatees. We must determine whether R. C. 2129.23(B) limits the persons entitled to the residue or whether the court may distribute the residue to any legatee or distributee entitled thereto.

Appellant argues that *In re Estate of Kelley, supra,* controls the decision in this case. The facts in *Kelley* are not similar to the facts in the present case. In *Kelley* the ancillary administrator made application to the Probate Court to distribute the Ohio residue to the domiciliary executor. The Probate Court ordered a nonresident creditor,

whose claims had already been allowed by the domiciliary executor and approved by the domiciliary Court, to file his claim as a general creditor with the ancillary administrator. The court further ordered the ancillary administrator to adjudicate the validity of this claim, and either accept it or reject it. If the claim was valid, the ancillary administrator was to pay the claim and then distribute the balance to three specific legatees.

The Court of Appeals in *Kelley* held that the Probate Court did not have authority to order the ancillary administrator to require a nonresident creditor to present a claim for allowance or rejection that already was allowed by the Court in the domiciliary administration. In other words, the Court of Appeals said that the Probate Court had no jurisdiction to readjudicate the validity of a claim which had been allowed by the Court in the domiciliary administration.

The Court of Appeals reversed and remanded for a new trial and stated that the domiciliary executor or other persons making a claim in the ancillary administration only has the burden of establishing that any part of the fund is required by the domiciliary executor for the payment of creditors whose claims have been allowed by the Court in the domiciliary administration.

Further, in *Kelley* there were not sufficient assets in the ancillary administration to pay both the specific bequests and the certified claim of the domiciliary administration.

In the present case, there is no allegation that the assets of the whole estate are insufficient to pay all creditors and legatees. We are only concerned with the Probate Court's authority to order distribution directly to nonresident legatees.

The Court of Appeals in *Kelley* interpreted G. C. 10511-25(b) (now R. C. 2129.23) to limit the discretion of the court in the ancillary administration. In *obiter dictum* the Court stated that it is not intended to authorize the probate court to order payments directly to nonresident creditors or to legatees and distributees who are not resi-

dents of the State of Ohio, except legatees of specific properties found within the State. The rights of nonresident creditors, distributees and legatees, other than legatees of specific property within the state, are subject to adjudication only in the domiciliary administration proceedings. The Probate Court should order the balance of the residuum remaining after payments to legatees and distributees who are residents of the state, and to nonresident legatees of specific property within the state, to the domiciliary executor or administrator, who is the person entitled thereto within the meaning of the statute.

The authority of a court of ancillary administration to dispose of local assets has been the subject of varying viewpoints in many other jurisdictions. See *Annotation*, 90 A. L. R. 1043 (1932). One view is that estates should be administered principally in one place—the decedent's domicile—and that ancillary administration should be limited to the collection of local assets, payment of expenses and claims of local creditors, with any residue transferred to the domiciliary executor. There are two reasons for so limiting ancillary administration. If creditors, heirs and legatees are required to resort to the courts of every state having assets of the decedent, in order to enforce their rights to share in those assets, a serious hardship is imposed on them. This also places the burden on the courts of the various states of interpreting and applying foreign law, with the possibility that non-uniformity of decision will result. *Swearingen* v. *Morris* (1863), 14 Ohio St. 424, 430. Another view gives complete discretion to ancillary administration to pay creditors and distribute assets to legatees and distributees. A middle view permits payment of only local creditors or distribution of only specific bequests or to local legatees or distributees. Each state has the prerogative of choosing what the role of its courts shall be in the ancillary administration of assets located within its boundaries. *Riley* v. *New York Trust Co.* (1942), 315 U. S. 343.

The Ohio Legislature has expressed its view as to the proper role of ancillary administration in adopting R. C. 2129.23.

While the dictum in *Kelley* may have appeal and may be considered preferred practice, we are not bound by it and cannot follow the narrow interpretation it places on R. C. 2129.23 (B).

The Ohio Legislature makes policy by its enactments which we are bound to follow. R. C. 2129.23 (B) is clear and unambiguous and places no restriction or limitation on persons entitled to the residue as suggested by *Kelley*.

R. C. 2129.23 gives the probate court discretion to dispose of the residue in an ancillary administration after payment of claims of creditors and taxes. The probate court may approve the transfer of the residue to the domiciliary executor or administrator, *or* if the court orders, the residue shall be paid over and delivered to the persons entitled thereto.

It is noted that subsections (A) and (B) are in the alternative and there is no restriction or limitation stated as to the persons entitled thereto, and there is no specific mention of the classes of persons entitled thereto.

If the legislature had intended to limit the authority of the court in the ancillary administration, it would have spelled out such limitations as proposed by *Kelley*.

We hold that in an ancillary administration, after payment of expenses and debts, the probate court may order distribution of the residue of the personal estate to the heirs or legatees, whether resident in Ohio or not, and without limitation to bequests of specific property. This is the rule in numerous other jurisdictions, either by statute or case law. *Riley* v. *New York Trust Co., supra; Estate of Barnholt* (1968), 9 Mich. App. 504, 157 N. W. 2d 488; *Estate of Fults* (1929), 177 Minn. 334, 225 N. W. 152; *Rader* v. *Stubblefield* (1906), 43 Wash 334, 86 Pac. 560; *Welch* v. *Adams* (1890), 152 Mass. 74, 25 N. E. 34; *Goodall* v. *Marshall* (1840), 11 New Hamp. 88.

If the residue is ordered distributed to the heirs or legatees, such distribution must be made in accordance with the law of the domicile of the decedent. *Howard* v. *Reynolds* (1972), 30 Ohio St. 2d 214; *Swearingen* v. *Morris, supra; Estate of Blomeen* (1963), 63 Wash. 2d 107, 385 Pac. 2d 540; *Goodall* v. *Marshall, supra.*

The probate courts of this State are competent to determine issues based upon the law of the decedent's domicile.

R. C. 2129.09 requires that notice be given to the domiciliary executor or administrator of the appointment of an ancillary administrator. Further, notice is to be given to the domiciliary administrator or executor of all of the estate's assets in this State and all debts and liabilities, R. C. 2129.15 and of all the proceedings conducted in the ancillary administration.

In the event that the domiciliary estate does not have enough assets to pay the claims of all the creditors, or if there are not enough assets to distribute to all of the legatees, and the assets in the ancillary administration may be necessary in order to satisfy the claims of all of the creditors, or to make an equitable distribution to the general devisees or of specific bequests, the domiciliary administrator or executor has the burden of proving or establishing that any part of the ancillary fund is required by the domiciliary estate for these payments.

No prejudice has resulted to the appellant in this case. A review of the record clearly establishes that the only issue raised on this appeal is the legal issue of the court's authority to distribute the assets to nonresident distributees and legatees under R. C. 2129.23. No issue was raised that the eight legatees are not entitled to the bequests and that the distribution ordered by the probate court to them is contrary to Florida law; no issue was raised concerning the solvency of the whole estate.

We must therefore assume that if the Ohio assets, which make up the residue of the estate after the payments of the claims, were transferred to the domiciliary executor, the final result would be the same. Consequently, the appellant has suffered no prejudice.

The first assignment of error is not well taken.

As was noted above, appellant did not file a motion to transfer the residue to the domiciliary executor but filed a "Petition in Opposition" to appellee's application for authority to distribute funds, in which he prayed for an

order directing appellee to deliver the funds in his possession to him as domiciliary executor. We will treat this "Petition in Opposition" as a motion to transfer the residue to Peter Pirvu the domiciliary executor. Since the Probate Court made no decision regarding distribution of the balance of the assets of the ancillary administration, after distribution of the eight legacies, we will consider appellant's motion to transfer the residue as having been overruled. This is the subject of appellant's second assignment of error.

The second assignment of error is well taken, but only insofar as it concerns the residue of the funds in the hands of the ancillary administrator after payment of expenses of administration, the claim of the Ohio creditor and payments to the eight nonresident legatees.

This residue in the hands of the ancillary administrator should be transferred to Peter Pirvu the domiciliary executor as provided for in R. C. 2129.23.

We affirm the trial court's decision authorizing distribution to the eight nonresident devisees of general bequests. However, we reverse the trial court's order overruling appellant's motion to transfer the residue to Peter Pirvu the domiciliary executor.

Judgment affirmed in part and reversed in part, with instructions to the Probate Court to order the transfer of the residue of the ancillary administration to the domiciliary executor consistent with this opinion.

*Judgment affirmed in part and reversed in part.*

SILBERT, P. J., and DAY, J., concur.